Case No: _____ Inmate Name: Joshua McGiboney
Date: 11-20-18 Inmate IDOC#: 85623
Document Title: COMPLAINT AND DEMAND FOR JURY TRIAL
Total Pages: 20 Inmate Initials Verifying Page Count: JM
Document(s) 1 of 1

Joshua McGiboney / 85623
I.S.C.I. / Medical Annex
P.O. Box 14
Boise, ID 83707

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

Joshua McGiboney,

PLAINTIFF,

v.

Corizon; Idaho Dept. of Corrections; Board of Corrections; Keith Yordy; Rebeka Haggard; Jeff Zmuda; Henry Atencio; Debbie Field; Cindy Wilson; David McClusky; Rona Siegert; Colin Brown; Murray Young; Ron Sutherlin; Matthew Sweetzer; Povar Tripper; Does 1-X; Aaron Hoffer;

DEFENDANTS.

Case No. 1:18-cv-529-BLW

COMPLAINT AND DEMAND FOR JURY TRIAL

## I. PRELIMINARY STATEMENT

1. THIS IS A CIVIL RIGHTS ACTION BROUGHT UNDER 42 U.S.C. § 1983 ARISING OUT OF DEFENDANTS' DELIBERATE INDIFFERENCE TO PLAINTIFF'S SERIOUS MEDICAL CONDITION WHILE IN THE CUSTODY OF THE BOARD OF CORRECTIONS, WHICH HAS LEFT THE PLAINTIFF PARALYZED BELOW THE CHEST & SUFFERING.

## II. JURISDICTION AND VENUE

2. THIS COURT HAS JURISDICTION OVER THE SUBJECT MATTER OF THIS COMPLAINT UNDER 42 U.S.C. §1983 AND 28 U.S.C. §§1331 AND 1343; 18 U.S.C. §3626; 42 U.S.C. §12101 ET. ETQ.; 5 U.S.C. §552A; 42 U.S.C. §§1985, 1986; 42 U.S.C. 2000cc; 18 U.S.C. §3663;

3. THIS COURT HAS SUPPLEMENTAL JURISDICTION OVER THE PLAINTIFF'S STATE LAW TORT CLAIMS UNDER 28 U.S.C. §1367.

4. THIS COURT HAS VENUE OVER THIS MATTER PERSUANT TO 28 U.S.C. §1391.

COMPLAINT AND DEMAND FOR JURY TRIAL - 1

## III. PARTIES

5. PLAINTIFF JOSHUA McGIBONEY, IS AN INDIVIDUAL RESIDING IN ADA COUNTY, IDAHO.

6. DEFENDANT CORIZON IS AN ENTITY DOING BUSINESS IN ADA COUNTY, IDAHO AS THE CONTRACTOR PROVIDING MEDICAL SERVICES FOR THE DEPT. OF CORRECTIONS NAMED IN INDIVIDUAL AND OFFICIAL CAPACITIES.

7. DEFENDANT DEPT. OF CORRECTIONS IS AN ENTITY DOING BUSINESS IN ADA COUNTY, IDAHO. NAMED IN OFFICIAL CAPACITY.

8. DEFENDANT BOARD OF CORRECTIONS IS AN ENTITY DOING BUSINESS IN ADA COUNTY, IDAHO. NAMED IN OFFICIAL CAPACITY.

9. DEFENDANT KEITH YORDY IS AN INDIVIDUAL WHO, UPON INFORMATION AND BELIEF, RESIDES IN ADA COUNTY, IDAHO. WARDEN NAMED IN INDIVIDUAL AND OFFICIAL CAPACITIES.

10. DEFENDANT REBEKA HAGGARD IS AN INDIVIDUAL WHO, UPON INFORMATION AND BELIEF, RESIDES IN ADA COUNTY, IDAHO. MEDICAL DIRECTOR NAMED IN INDIVIDUAL AND OFFICIAL CAPACITIES.

11. DEFENDANT JEFF ZMUDA IS AN INDIVIDUAL WHO, UPON INFORMATION AND BELIEF, RESIDES IN ADA COUNTY, IDAHO. DEPUTY DIRECTOR NAMED IN INDIVIDUAL AND OFFICIAL CAPACITIES.

12. DEFENDANT HENRY ATENCIO IS AN INDIVIDUAL WHO, UPON INFORMATION AND BELIEF, RESIDES IN ADA COUNTY, IDAHO. DIRECTOR OF PRISONS NAMED IN INDIVIDUAL AND OFFICIAL CAPACITIES.

13. DEFENDANT DEBBIE FIELD IS AN INDIVIDUAL WHO, UPON INFORMATION AND BELIEF, RESIDES IN ADA COUNTY, IDAHO. BOARD OF CORRECTIONS MEMBER NAMED IN INDIVIDUAL AND OFFICIAL CAPACITIES.

COMPLAINT AND DEMAND FOR JURY TRIAL - 2

14. DEFENDANT CINDY WILSON IS AN INDIVIDUAL WHO, UPON INFORMATION AND BELIEF, RESIDES IN ADA COUNTY, IDAHO. BOARD OF CORRECTIONS MEMBER NAMED IN INDIVIDUAL AND OFFICIAL CAPACITIES.

15. DEFENDANT DAVID McCLUSKY IS AN INDIVIDUAL WHO, UPON INFORMATION AND BELIEF, RESIDES IN ADA COUNTY, IDAHO. BOARD OF CORRECTIONS MEMBER NAMED IN INDIVIDUAL AND OFFICIAL CAPACITIES.

16. DEFENDANT RONA SIEGERT IS AN INDIVIDUAL WHO, UPON INFORMATION AND BELIEF, RESIDES IN ADA COUNTY, IDAHO. HEALTH SERVICES DIRECTOR NAMED IN INDIVIDUAL AND OFFICIAL CAPACITIES.

17. DEFENDANT COLIN BROWN IS AN INDIVIDUAL WHO, UPON INFORMATION AND BELIEF RESIDES IN ADA COUNTY, IDAHO. HEALTH SERVICES PROVIDER NAMED IN INDIVIDUAL AND OFFICIAL CAPACITIES.

18. DEFENDANT MURRAY YOUNG IS AN INDIVIDUAL WHO, UPON INFORMATION AND BELIEF, RESIDES IN ADA COUNTY, IDAHO. MEDICAL DIRECTOR NAMED IN INDIVIDUAL AND OFFICIAL CAPACITIES.

19. DEFENDANT RON SUTHERLIN IS AN INDIVIDUAL WHO, UPON INFORMATION AND BELIEF, RESIDES IN ADA COUNTY, IDAHO. MEDICAL DIRECTOR NAMED IN INDIVIDUAL AND OFFICIAL CAPACITIES.

20. DEFENDANT MATTHEW SWEETZER IS AN INDIVIDUAL WHO, UPON INFORMATION AND BELIEF, RESIDES IN ADA COUNTY, IDAHO. MEDICAL DIRECTOR NAMED IN INDIVIDUAL AND OFFICIAL CAPACITIES.

21. DEFENDANT POVAR TRIPPER IS AN INDIVIDUAL WHO, UPON INFORMATION AND BELIEF, RESIDES IN ADA COUNTY, IDAHO. HEALTH SERVICE PROVIDER NAMED IN INDIVIDUAL AND OFFICIAL CAPACITIES.

22. DEFENDANT AARON HOFFER IS AN INDIVIDUAL WHO, UPON INFORMATION AND BELIEF, RESIDES IN ADA COUNTY, IDAHO. HEALTH SERVICE ADMINISTRATOR NAMED IN INDIVIDUAL AND OFFICIAL CAPACITIES.

COMPLAINT AND DEMAND FOR JURY TRIAL - 3

# IV. FACTUAL ALLEGATIONS

22. Plaintiff has a serious medical condition, Arterial Venous Malformation (AVM), it's readily observable at all times. The recognized disability effects Activities of Daily Living (ADL's). Plaintiff's symptoms have been worsening causing severe pain, loss of strength, sleep, mobility, incontinence, bowel, bladder & sex functions, pressure sores, etc. For which Plaintiff has made numerous requests to see a qualified physician & get an MRI/angiogram to properly diagnose & treat.

23. On January 7, 2016 Plaintiff saw Dr. Milijorie in the Idaho State Correctional Center. Plaintiff described worsening symptoms of AVM & requested MRI/angiogram work up. Dr. Milijorie stated that provider Colin Brown's notes indicate Plaintiff was improving & satisfied with his treatment. Plaintiff informed Dr. Milijorie that was not true. Dr. Milijorie said he'd discuss with Regional Medical Director Murray Young & then set appointment with Plaintiff.

24. March 2, 2016 Plaintiff was transferred to the Idaho State Correctional Institution, & submitted a Health Service Request (Kite)/(HSR) to visit Dr. Young for MRI/angiogram order, discuss treatment plan, surgery, neuro rehab options for Plaintiff's hemmorhagic AVM, incontinence, pain, etc.

25. March 24, 2016 Provider Colfax asked Plaintiff why he wants to meet with Dr. Young instead of Dr. Agler. Plaintiff explained how Dr. Agler has already been deliberately indifferent to his serious medical needs & neuro specialists are the only Dr's that are qualified to treat AVM & referral must come from Dr. Young.

COMPLAINT AND DEMAND FOR JURY TRIAL - 4

26. April 12, 2016 Provider Janet Mitchell placed Plaintiff on chronic pain clinic, to be seen every month. Plaintiff asked about getting a MRI for worsening neuro symptoms.

27. April 25, 2016 Provider Ms. Duncan ordered TENS/MRI.

28. April 29, 2016 Ombudsman Shelli Mallet sent notice to Plaintiff that RMD Young denied NP. Duncan's orders.

29. May 9, 2016 RMD Young replied to Plaintiff's kite to request meeting & MRI. Dr. Young refused to meet.

30. July 14, 2016 Chronic care nurse said she'd ask Dr. if Plaintiff can get a MRI workup.

31. July 25, 2016 Reply to kite Plaintiff sent to Dr. Young only stated he's no longer the RMD.

32. August 3, 2016 Provider Dan Berry will call RMD Rebeka Haggard to get MRI & meet with Plaintiff.

33. September 1, 2016 Plaintiff finally got appointment with a physician, Dr. Matthew Sweetzer, who was not familiar with AVM. Plaintiff began to explain the serious pain, weakness, & worsening symptoms consistent with Hemmorhage of AVM. Dr. Sweetzer said we obviously must order imaging to see extent of condition & neuro consult of refered Barrows Institute. Suddenly OPC Nurse Jan grabbed the Plaintiff's wheelchair handles & pulled him out of Dr. office. Plaintiff asked why she did that. She stated that Plaintiff's time was up. Plaintiff was only in Dr's office for 5 minutes.

34. September 21, 2016 Provider Diana Dice said Dr. Sweetzer is gone now & Plaintiff must start over again & resubmit kites for Plaintiff's issues. Corizon denied the Lyrica & MRI.

COMPLAINT AND DEMAND FOR JURY TRIAL - 5

35. PROVIDER DIANA DACE SAID SHE'D LOOK INTO MRI ORDER, OCT. 5

36. OCTOBER 24, 2016 PLAINTIFF WENT TO ST. LUKE'S HOSPITAL. PLAINTIFF GOT ULTRASOUND ON LEFT LEG. DR. READA STATED ABNORMALITY/OBSTRUCTION. RECOMMEND MRI/CT SCAN ADDITIONAL IMAGING NEEDED.

37. DECEMBER 6, 2016 PROVIDER POVAR TRIPPER STATED HE ORDERED MRI & RMD PRESCRIBE LYRICA & INCONTINENCE MED.

38. MARCH 27, 2017 PROVIDER DAN DELWOO SAID WE'D GET MRI & FOLLOW UP WITH DR. RONALD SUTHERLIN. PLAINTIFF KITED.

39. APRIL 13, 2017 PROVIDER TRIPPER SAID RMD HAGGARD DENIED THE MRI ORDER AGAIN. PLAINTIFF ASKED WHY CORIZON IS BOUNCING HIM AROUND TO MANY DIFFERENT LOWER LEVEL "PROVIDER" NURSES INSTEAD OF SIMPLY SETTING APPOINTMENT WITH A SINGLE PHYSICIAN WHO'S ACTUALLY QUALIFIED TO TREAT HIM, & ASKED WHY DOES THE RMD HAGGARD REFUSE TO MEET & KEEPS DENYING MRI/TREATMENT ORDERS THE PROVIDERS ORDER. PLAINTIFF WROTE EVERY PARTY. PROVIDER TRIPPER LUNGED AGGRESSIVELY TOWARDS PLAINTIFF. PLAINTIFF WAS SCARED & WHEELED BACK OUT OF OFFICE. PROVIDER TRIPPER SAID BECAUSE PLAINTIFF FILED CIVIL RIGHTS SUIT, HE'S DONE.

40. PLAINTIFF PLEADED WITH PROVIDER TO GET AN MRI & SEE PHYSICIAN IMMEDIATELY TO PREVENT FURTHER IRREPARABLE HARM. CORIZON PT ELLEN WESTBURG RECOMMEND GETTING DR. REFERRAL TO NEURO REHAB.

41. APRIL 26, 2017 MS. WATSON & MS. HILL CAME TO MEDICAL ANNEX WHERE PLAINTIFF IS HOUSED. PLAINTIFF TOLD THEM HE NEEDED HELP ASAP. THEY SAID THAT ALTHOUGH THEY OVERSAW THE HEALTH PROGRAM MEDICAL PROVIDED, THEY ACTUALLY WORKED FOR IDOC & THAT'S CORIZON'S DUTY. PLAINTIFF GRIEVED ALL PARTIES.

42. MAY 11, 2017 PILL PASS NURSE AMBER NOTICED PLAINTIFF'S PALE, CLAMMY SKIN & STAGGERING. PLAINTIFF EXPLAINED SEVERITY OF COMPLICATIONS CONSISTENT WITH AVM HEMMORHAGING. NEED DR FOR MRI.

COMPLAINT AND DEMAND FOR JURY TRIAL — 6

43. MAY 12, 2017 GAIL, FROM COURT INJUNCTION BALLA CLASS TOLD PLAINTIFF SHE'D ASK DR. ALVAREZ ABOUT GETTING A MRI AFTER PLAINTIFF EXPLAINED SEVERITY OF WORSENING SYMPTOMS & SEE ABOUT BARROW'S INSTITUTE NEURO EVAL.

44. JUNE 22, 2017 PROVIDER STEVE MARTIN SAID CORIZON IS OKAY WITH NEUROREHAB HYDROTHERAPY BUT I.D.O.C. INTERFERRING. PLAINTIFF AGAIN ASKED FOR MRI & TO SEE A PHYSICIAN QUALIFIED TO TREAT HIS NEUROLOGICAL CONDITION.

45. AUGUST 3, 2017 MEDICAL PAROLE DENIED BECAUSE CORIZON'S PHYSICIAN SUTHERLIN SENT A LETTER TO THE PAROLE COMMISSION STATING PLAINTIFF WAS STABLE & DOES NOT NEED SURGERY, WHEN IN FACT DR. SUTHERLIN NEVER ONCE MET PLAINTIFF & PLAINTIFF REPORTED SEVERELY WORSENING CONDITION & DID REQUIRE SURGERIES FOR HIS HEMMORHAGING ARTERY.

46. SEPTEMBER 21, 2017 PLAINTIFF HAD ATTORNEY CRAIG DURHAM CALL TO GET A DR.'S APPOINTMENT.

47. NOVEMBER 21, 2017 PLAINTIFF WAS FINALLY TRANSPORTED TO ST. LUKE'S FOR MRI. (13 MONTHS AFTER DR. READA'S ORDER!)

48. DECEMBER 5, 2017 PROVIDER WILL ROGERS SAW PRESSURE SORES & MRI IMPRESSIONS:
    INTERVAL MARKED PROGRESSION OF DISTAL SPINAL CORD SYRINX BELOW T7-T11. ALSO L3-4 ADVANCED DEGENERATIVE DISC DISEASE WITH SEVERE RIGHT FORAMINAL STENOSIS.
    SPINAL CORD SYRINX EXTENDS FROM T2, T3-T11. THERE HAS BEEN INTERVAL EXPANSION OF SYRINX INVOLVING THE MID & LOWER THORACIC CORD. THE DISTAL SYRINX HAS A MAXIMAL DIAMETER OF 1.2 CM PREVIOUSLY ONLY MEASURING UP TO 4MM.
    THE 2013 IMAGING MEASURED 2MM.
    THE 2012 IMAGING MEASURED 1MM.

49. WILL ROGERS SAID HE WOULD EMAIL RMD HAGGARD AS WELL AS DR. MONTLBONO IMMEDIATELY.
    PLAINTIFF'S LEGAL MAIL IS BEING OPENED OUTSIDE HIS PRESENCE IMPEDING ACCESS TO COURTS/COUNSEL.

COMPLAINT AND DEMAND FOR JURY TRIAL - 7

50. DECEMBER 21, 2017 DR. HAGGARD REPLIED TO ONE OF PLAINTIFF'S KITES. SHE STATED SHE WOULD RECOMMEND MEDICAL PAROLE SO PLAINTIFF COULD JUST HAVE HIS FAMILY TAKE HIM TO SEEK HIS OWN TREATMENT & HE'S OTHERWISE NOT ELIGIBLE UNTIL 2023.

51. DECEMBER 28, 2017 PLAINTIFF MET WITH PROVIDER SUMMER ELDRIDGE. SHE WENT DOWN THE HALL TO ANOTHER OFFICE & BACK TO TALK TO DR. HAGGARD, BUT PLAINTIFF STILL NEVER MET THE DR.. SHE PRESCRIBED MORPHINE TO DULL THE SEVERE PAIN; BATHING CLOTHS TO HELP CLEAN INCONTINENCE; & SAID THEY'RE WAITING TO SEE WHAT DR. MONTLBONO THINKS.

52. PRESSURE SORES BLEEDING ALL OVER PANTS & SHEETS. INCONTINENCE BURNING OPEN WOUNDS. ASKED CORIZON FOR A WHEELCHAIR THAT ITS SEAT ISN'T SAGGING DOWN ONTO METAL BARS TO STOP BUSTING SKIN OPEN. IDOC'S RESTRICTED POLICIES FORCED PLAINTIFF TO SIT IN BLOOD & URINE WITH OPEN WOUNDS & REFUSED HIM ACCESS TO SHOWERS ALL NIGHT & NO LAUNDRY ALL WEEK.

53. JANUARY 22, 2018 PLAINTIFF GAVE C.O. COLLINS AN EARLIER DRAFT OF THIS COMPLAINT TO FILE BECAUSE THE D.O.C. PARALEGAL REFUSES TO ALLOW PLAINTIFF TO ACCESS COURTS FOR THIS CLAIM.

54. JANUARY 25, PLAINTIFF RECEIVED THAT COMPLAINT BACK. THE D.O.C. OPENED THE LEGAL MAIL OUTSIDE OF PLAINTIFF'S PRESENCE & STOPPED IT FROM GOING OUT.

55. FEBRUARY 1, 2018 PLAINTIFF MET DR. ONDREJ CHOUTKA. THE NEUROSURGEON ORDERED PERSCRIPTION LYRICA, ANGIOGRAM FILES, IMMEDIATE STINT IMPLANT IN SYRINX, SPINAL CORD FORAMINOCTOMY SURGERIES.
THE SPECIALIST WAS SHOCKED THAT PLAINTIFF SUFFERED FOR SO LONG BEFORE HE WAS BROUGHT TO ST. AL'S HOSPITAL FOR TREATMENT.

56. RN LISA HAYES TOLD PLAINTIFF CORIZON IS OUT OF BATHING CLOTHES & HE MUST SIT IN HUMAN WASTE UNTIL THEY GET SOME.

COMPLAINT AND DEMAND FOR JURY TRIAL – 8

57. FEBRUARY 13, 2018 PLAINTIFF MET WITH PROVIDER SUMMER & REVIEWED DR. CHOUTKA'S ORDERS. & ALSO SHOWED RN NICK THE SAGGING SEAT ON WHEELCHAIR CAUSING PAINFUL PRESSURE SORES AGAIN, BUT THEY SAID NEW CHAIRS ARE EXPENSIVE & MUST BE APPROVED PER POLICY. SO PLAINTIFF WAS DENIED.

58. FEBRUARY 22, 2018 RN JONI LEMONS SHOWED PLAINTIFF A LETTER THAT CORIZON DR. SUTHERLIN SENT TO THE MEDICAL PAROLE COMMISSION. IT STATES, IN PART; AVM STABLE WITH NO RECOMMENDATIONS FOR SURGERY, WOULDN'T REQUIRE ANY SPECIAL CARE & PLAINTIFF WAS ABLE TO PERFORM ALL ACTIVITIES OF DAILY LIVING. WHEN IN FACT DR. SUTHERLIN IGNORED ALL OF PLAINTIFFS PLEAS FOR HELP & THE 2 NEVER ONCE MET. — THAT LETTER WAS DATED JULY 5, 2017.

59. FEBRUARY 22, 2018 CORIZON DR. HAGGARD'S LETTER, DATED DECEMBER 20, 2017 WAS ALSO SHOWN TO PLAINTIFF: DR. HAGGARD ADMITS THAT PLAINTIFF HAD LONGSTANDING DIAGNOSIS OF LIFE THREATENING CONDITION WITH CHRONIC EFFECTS OF SEVERE DISABILITIES. ALTHOUGH DR. HAGGARD ALSO NEVER EVEN MET WITH THE PLAINTIFF SHE DID ACKNOWLEDGE THE FACT THAT THE MRI DID REVEAL ADVANCED DEGENERATIVE DISCS WITH SEVERE STENOSIS, REQUIRING PROMPT SURGERIES.

60. FEBRUARY 26, 2018 C.O.'s DELUCA & CURTIS ROLLED UP PLAINTIFF'S PROPERTY & RIFLED THROUGH ALL LEGAL WORK. PLAINTIFF WENT TO ST. AL's & DR. PECK PERFORMED SURGICAL ANGIOGRAM. AFTERWARDS PLAINTIFF WAS INSTRUCTED TO LAY DOWN & KEEP LEG STRAIGHT FOR REST OF DAY BUT 2 HOURS LATER I.D.O.C. OFFICERS THREW PLAINTIFF IN BACKSEAT OF A COMPACT CAR & SPED BACK TO PRISON.

61. UPON RETURN PLAINTIFF WAS FORCED TO RUN AROUND & RETRIEVE PROPERTY & BEDDING. WHILE ATTEMPTING TO PUSH, PULL & LIFT PLAINTIFF FELL & THE SURGICAL SITE SPLIT OPEN & BLED EVERYWHERE. 10 MINUTES LATER THE C.O. CALLED EMS SCHAFFER, WHO INSTRUCTED PLAINTIFF TO LAY WITH LEG STRAIGHT ALL DAY.

62. FEBRUARY 27 NEURO CONSULT. DR. ONDREJ STILL HAS NOT RECEIVED THE 2004 & 2012 ANGIOGRAM RESULTS HE TOLD CORIZON HE NEEDS,

COMPLAINT AND DEMAND FOR JURY TRIAL — 9

URGENTLY BEFORE SURGERY FOR COMPARISON. HE STATES 100% RISK OF CATASTROPHIC STROKE IF PLAINTIFF LEFT UNTREATED. SO PLAN FOR MULTIPLE ARTERIAL EMBOLISMS REQUIRED TO STOP THE BLEEDING IN SPINAL CORD, THEN IMPLANT SHUNT IN SYRINX TO DRAIN FLUID FOLLOWED BY AGGRESSIVE NEURO REHAB INCLUDING POOL THERAPY.

63. MARCH 1, 2018 DUE TO PRISON OVERCROWDING PLAINTIFF WAS NOT GIVEN BEDDING, CLOTHING, PROPERTY UNTIL NOW. ALTHOUGH QUALIFIED, THE PARDONS & PAROLE COMMISSION DENIED PLAINTIFF'S REQUEST TO BE MEDICALLY PAROLED IN ORDER TO SEEK ADEQUATE MEDICAL CARE.

64. MARCH 7, 2018 DR. PECK SAID PLAINTIFF SHOULD NOT HAVE HAD TO BEND LEG AFTER ANGIOGRAM TO MAKE BED & SHOULD HAVE GOT AN ULTRASOUND IMMEDIATELY AFTER FALLING.

65. MARCH 18, 2018 PLAINTIFF MOVED FOR DR. PECK'S SURGERY. EMBOLIZED 2 ANEURYSMS, FOLLOW-UP FOR THE REST IN A MONTH. MRI SHOWED SEVERE SCOLIOSIS, BONE SPURS, LIGAMENTS, DISCS ALL CRUSHED. IMPLANTED SHUNT AT T-10, BLEEDING BAD BECAUSE OF EXCESSIVE DELAY.

66. DR. ONDREJ ORDERED STANCE CONTROL KAFO ORTHOTIC. ST. AL'S EVALUATED & MEASURED FOR DEVICE.

67. STARS PT MARIANNE & JUSTINE SAID PLAINTIFF REQUIRES INTENSIVE NEURO REHAB 3 HOURS DAILY. BUT IDOC OFFICERS INTERFERRED & TOLD THERAPISTS PLAINTIFF WON'T STAY INPATIENT, THAT THERE'S A THERAPIST AT THE PRISON.

68. PLAINTIFF IS UNABLE TO URINATE SO URECHOLINE IS PERSCRIBED & DR. ORDERED DAILY BLADDER SCANNING.

69. MARCH 27, 2018 CORIZON FINALLY PROVIDED A WHEELCHAIR THAT IT'S SEAT WASN'T SAGGING ON METAL BARS BUT IT'S TOO BIG & PLAINTIFF UNABLE TO EFFECTIVELY PROPELL SELF.

70. MARCH 28, 2018 DR. HAGGARD INFORMED PLAINTIFF THAT CORIZON D.O.N. DECIDED PLAINTIFF MUST SIT ON METAL BUNK WITH WORN OUT PAD & WILL NOT GET A MEDICAL MATTRESS, DESPITE PLAINTIFF'S

COMPLAINT AND DEMAND FOR JURY TRIAL — 10

BRUISED, ATROPHIED LEG & OPEN PRESSURE SORES ON GLUTE & HIP.

71. APRIL 6, 2018 PLAINTIFF WAS TOLD CORIZON IS OUT OF CATHETERS AGAIN SO HE MUST RINSE OFF THEN RE-INSERT 16" CONTAMINATED HOSE INSIDE HIS PENIS EVERY TIME HE MUST URINATE FOR THE REST OF HIS LIFE, RISKING PAINFUL & DANGEROUS KIDNEY INFECTIONS.

72. MAY 1, PLAINTIFF SAW NURSE WILL ROGERS & ASKED WHY DOES HE CONTINUE TO GET BOUNCED AROUND TO SO MANY DIFFERENT PROVIDERS WHO DON'T EVEN HAVE FULL FILE. PLAINTIFF SAW STRING OF E-MAIL BETWEEN CORIZON ADMINISTRATION REGARDING WHY THEY HAVEN'T BEEN PROVIDING THE DR. PRESCRIPTIONS LYRICA, FOR NON MEDICAL. THERE WAS A 13 MONTH DELAY IN PROVIDING THAT PRESCRIPTION ALL WHILE AWARE OF PLAINTIFF'S SEVERE PAIN & SUFFERING. CORIZON RETALIATED BY ABRUPTLY STOPPING ANOTHER MEDICATION THAT WAS SUPPOSED TO TAPER OVER 2 WEEKS.

73. MAY 19, PLAINTIFF FINALLY RECEIVED THE URECHOLINE PRESCRIPTION BUT BECAUSE OF THE EXCESSIVE DELAY, IT WAS TOO LATE & PLAINTIFF IS PERMANENTLY DAMAGED.
I.D.O.C. TOOK AWAY REHAB ROOM & DENIED ACCESS TO EXERCISE EQUIPMENT TO WHEELCHAIR BOUND INMATES.

74. IDOC RECEIVES FEDERAL FUNDING & HAS CONTRACTED WITH CORIZON, INC. TO PROVIDE THE COMMUNITY STANDARD OF CARE FROM JANUARY 2014 THROUGH DECEMBER 2018. CORIZON HAS BEEN PAID $198,379,325.00 FOR THIS SERVICE.

75. PLAINTIFF HAS REQUESTED COUNTLESS TIMES THAT I.D.O.C. PROVIDERS PRESCRIBE THE COMMUNITY STANDARD OF CARE FOR HIS SEVERE SPINAL CORD INJURY & TO END THE PAIN & SUFFERING FROM HIS DISABILITIES. AS A DIRECT RESULT OF THE POLICY & PRACTICE OF IDOC & CORIZON, THE BOARD OF CORRECTIONS, & THE INDIVIDUAL DEFENDANTS' CONDUCT, PLAINTIFF HAS BEEN DENIED RECOMMENDED MEDICAL CARE.

76. PLAINTIFF HAS EXHAUSTED ALL ADMINISTRATIVE REMEDIES & GRIEVANCES.

COMPLAINT AND DEMAND FOR JURY TRIAL - 11

## V. CLAIM FOR RELIEF

77. Plaintiff repeats and re-alleges each of the allegations set forth in the preceding paragraphs as if set forth in full herein.

78. The Defendants were deliberately indifferent to Plaintiff's serious medical needs, health & safety, and thereby violated Plaintiff's right to be free from cruel & unusual punishment under the 8th Amendment to the United States Constitution.

79. Defendants' deliberate indifference was manifested, but not necessarily limited to, the following:

    A. The failure to provide timely MRI/angiogram;

    B. The failure to provide Plaintiff with the treatment recommended by medical care providers, especially in light of Plaintiff's medical records, his visible limitations, and consistent reports of pain;

    C. The 4 year delay in seeing a physician or specialist qualified to treat an AVM, given the time sensitive nature of Plaintiff's injury.

80. At all times relevant to this complaint, Defendants' were acting under color of state law.

81. At all times relevant to the complaint, the conduct of all Defendants was intentional, willful, & reckless with respect to Plaintiff's rights under federal law.

82. Defendants were aware of facts from which the inference could be drawn that a substantial risk of serious harm to Plaintiff existed if Plaintiff did not

COMPLAINT AND DEMAND FOR JURY TRIAL — 12

RECEIVE TIMELY TREATMENT & DEFENDANTS DID, IN FACT, DRAW THAT INFERENCE.

83. DEFENDANTS HAD A DUTY TO ACT & FAILED TO DO SO IN THE FACE OF AN UNJUSTIFIABLY HIGH RISK OF HARM THAT WAS KNOWN OR SO OBVIOUS THAT IT SHOULD BE KNOWN.

84. PLAINTIFF HAD A SERIOUS MEDICAL NEED. THE FAILURE TO PROPERLY TREAT HIS SPINAL CORD AVM COMPLICATIONS RESULTED IN FURTHER SIGNIFICANT INJURY & THE UNNECESSARY & WANTON INFLICTION OF PAIN. PLAINTIFF HAD AN INJURY THAT A REASONABLE DOCTOR OR PATIENT WOULD FIND IMPORTANT & WORTHY OF TREATMENT. PLAINTIFF HAD A MEDICAL CONDITION THAT SIGNIFICANTLY ALTERED HIS DAILY ACTIVITIES & CAUSES HIM CHRONIC & SEVERE PAIN.

85. DEFENDANTS' DELIBERATE INDIFFERENCE PROXIMATELY CAUSED DAMAGES TO PLAINTIFF INCLUDING, BUT NOT LIMITED TO; UNNECESSARY CHRONIC & SEVERE PAIN, EMOTIONAL & MENTAL DISTRESS, PERMANENT DISABILITIES ON PLAINTIFF'S USE OF HIS LEGS, TORSO, BOWEL, SEX, BLADDER, & THE NEED FOR FUTURE MEDICAL TREATMENT.

86. DEFENDANTS' MEDICAL MALPRACTICE WAS MANIFESTED, BUT NOT NECESSARILY LIMITED TO, THE FOLLOWING;

A. PLAINTIFF REPEATS & RE-ALLEGES EACH OF THE ALLEGATIONS SET FORTH IN THE PRECEDING PARAGRAPHS AS IF SET FORTH IN FULL HEREIN;

B. THE TREATMENT & CARE DEFENDANTS PROVIDED TO PLAINTIFF WAS GROSSLY NEGLIGENT & FELL WELL BELOW THE APPLICABLE STANDARD OF CARE BECAUSE, AMONG OTHER THINGS, THEY REFUSED TO REFER PLAINTIFF TO A NEUROSURGEON & GET APPROPRIATE DIAGNOSTIC IMAGING, SURGERIES & PRESCRIPTIONS IN A TIMELY MANNER.

C. AS A RESULT OF DEFENDANTS' GROSS NEGLIGENCE, PLAINTIFF SUFFERED A SIGNIFICANT PERSONAL INJURY & DAMAGES.

87. EIGHTH AMENDMENT: ALL DEFENDANTS

A. PLAINTIFF REPEATS & RE-ALLEGES EACH OF THE ALLEGATIONS SET FORTH IN THE PRECEDING PARAGRAPHS AS IF SET FORTH IN FULL HEREIN.

COMPLAINT AND DEMAND FOR JURY TRIAL - 13

B. Defendants were deliberately indifferent to Plaintiff's serious medical needs, health & safety, & thereby violated Plaintiff's right to be free from cruel & unusual punishment under the 8th Amendment to the United States Constitution.

88. The Defendants' deliberate indifference was manifested but not necessarily limited to the following:

A. Hiring incompetent staff & not enough staff; failure to train;

B. The repeated & continued failure to provide urgent care when clearly warranted under the circumstances;

C. Denying, delaying, & intentionally interfering with prescribed and/or necessary medical treatment & equipment;

D. Adopting, approving and/or implementing policies that resulted in the failure to provide Plaintiff with adequate diagnostics, physician or specialist appointments, treatments, neurological care when reported symptoms consistent with hemorrhaging AVM & stroke.

E. At all times relevant to the complaint, the conduct of all Defendants was intentional, willful, & reckless with respect to Plaintiff's rights under federal law.

89. RETALIATION: ALL DEFENDANTS

A. Plaintiff repeats & re-alleges each of the allegations set forth in the preceding paragraphs as if set forth in full herein.

B. Defendants have taken actions against Plaintiff for exercising his 1st Amendment rights. These acts of retaliation are ongoing.

C. In exercising his 1st Amendment rights, Plaintiff has filed grievances, concern forms, health service request forms, complained to the Governor, Board of Corrections, Medical Accreditation, ACLU, Balla Class,

90. Defendants' retaliation against Plaintiff is manifest by, but not necessarily limited to the following:

A. Refusing to allow Plaintiff to be seen by a neuro specialist, refusing/delaying specialist orders, interfering with prescribed treatment, obstructing access to courts/counsel to bring this action, fraudelently

COMPLAINT AND DEMAND FOR JURY TRIAL — 14

ENTERING INFORMATION INTO OFFICIAL RECORDS.

   B. THESE ACTIONS WOULD HAVE THE EFFECT OF CHILLING A PERSON OF ORDINARY FIRMNESS FROM EXERCISING THESE RIGHTS.

91. AMERICAN'S WITH DISABILITIES ACT DISCRIMINATION: ALL DEFENDANTS

   A. PLAINTIFF REPEATS & RE-ALLEGES EACH OF THE ALLEGATIONS SET FORTH IN THE PRECEDING PARAGRAPHS AS IF SET FORTH IN FULL HEREIN.

   B. DEFENDANTS DISCRIMINATED AGAINST PLAINTIFF'S DISABILITIES, AND THEREBY VIOLATED PLAINTIFF'S RIGHTS TO BE FREE FROM DISCRIMINATION UNDER THE AMERICAN'S WITH DISABILITIES ACT.

92. THE DEFENDANTS' DISCRIMINATION WAS MANIFESTED, BUT NOT NECESSARILY LIMITED TO THE FOLLOWING:

   A. THE REPEATED & CONTINUED REFUSAL TO PROVIDE MEANINGFUL TREATMENT BECAUSE OF PLAINTIFF'S DISABILITY;

   B. DENYING, DELAYING, & INTENTIONALLY INTERFERING WITH PRESCRIBED AND/OR NECESSARY MEDICAL TREATMENT BECAUSE OF PLAINTIFF DISABILITY.

   C. REMOVING ACCESS TO REHAB ROOM & EXERCISE EQUIPMENT BECAUSE OF PLAINTIFF'S DISABILITY.

   D. ADOPTING, APPROVING AND/OR IMPLEMENTING POLICIES THAT RESULTED IN THE FAILURE TO PROVIDE PLAINTIFF WITH ADEQUATE DIAGNOSTICS, PHYSICIAN OR SPECIALIST APPOINTMENTS, TREATMENT, NEUROLOGICAL CARE WHEN PLAINTIFF DOES HAVE A QUALIFIED, AND READILY OBSERVABLE DISABILITY BECAUSE OF HIS DISABILITY,

   E. AT ALL TIMES RELEVANT TO THE COMPLAINT, THE CONDUCT OF ALL DEFENDANTS WAS INTENTIONAL, WILLFUL, & DISCRIMINATORY WITH RESPECT TO PLAINTIFF'S RIGHTS UNDER FEDERAL LAW.

93. CONSPIRACY: ALL DEFENDANTS

   A. PLAINTIFF REPEATS & REALLEGES EACH OF THE ALLEGATIONS SET FORTH IN THE PRECEDING PARAGRAPHS AS IF SET FORTH IN FULL HEREIN.

   B. DEFENDANTS CONSPIRED AGAINST PLAINTIFF & THEREBY VIOLATED PLAINTIFF'S RIGHTS UNDER FEDERAL LAW.

94. THE DEFENDANTS' CONSPIRACY WAS MANIFESTED, BUT

NOT NECESSARILY LIMITED TO THE FOLLOWING:

    A. OVERCROWDING DISABLED PRISONERS & FAILING TO PROVIDE EQUAL ACCESS TO MEDICAL, RECREATION, EDUCATION, RELIGION;

    B. IMPLEMENTING POLICIES THAT PASS DISABLED PRISONERS AROUND TO MANY DIFFERENT LOWER-LEVEL NURSES WITH NO ONE PERSON OVERSEEING DISABLED PRISONER'S CARE;

    C. FAILURE TO PROVIDE UNOBSTRUCTED ACCESS TO SUPPLIES & EQUIPMENT FOR DISABILITIES;

    D. CONSPIRING AND/OR FAILING TO PREVENT A WRONGFUL CONSPIRACY OF WHICH AN UNECESSARY HIGH RISK OF INJURY/HARM WOULD COME & IN FACT DID COME TO PLAINTIFF BECAUSE NO ONE PERSON OVERSEES A PATIENT'S SERIOUS MEDICAL NEEDS, TOO OVERCROWDED, NOT ENOUGH QUALIFIED STAFF, FAILURE TO TRAIN;

    E. AT ALL TIMES RELEVANT TO THIS COMPLAINT, THE CONDUCT OF ALL DEFENDANTS WAS INTENTIONAL, WILLFUL, AND CONSPIRACY TO INTERFER WITH PLAINTIFF'S CIVIL RIGHTS AS A DISABLED PRISONER UNDER FEDERAL LAW.

## VI. JURY TRIAL DEMANDED

95. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 38, PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.

## VII. REQUESTED RELIEF

96. WHEREFORE, PLAINTIFF RESPECTFULLY REQUESTS:

    A. COMPENSATORY DAMAGES, INCLUDING, BUT NOT LIMITED TO, ACTUAL LOST WAGES, PAIN & SUFFERING & MENTAL ANGUISH & HUMILIATION;

    B. PRE-JUDGEMENT INTEREST & POST-VERDICT INTEREST;

    C. PUNATIVE DAMAGES ALLOWED UNDER IDAHO CODE § 6-1604; AGAINST ALL DEFENDANTS JOINTLY & SEVERALLY PURSUANT TO 42 U.S.C. § 1983;

    D. REASONABLE ATTORNEY FEES & COSTS; AS PROVIDED UNDER 42 U.S.C. § 1988, IDAHO RULE OF CIVIL PROCEDURE 54(D),

COMPLAINT AND DEMAND FOR JURY TRIAL - 16

AND OTHER APPLICABLE STATUTES;

    E. DECLORATORY RELIEF;

    F. RELEASE FROM INCARCERATION TO PURSUE PROPER MEDICAL TREATMENT; PURSUANT TO STATE CODE FOR SEVERELY DISABLED / PERMANENTLY INCAPACITATED OFFENDERS, & OTHER APPLICABLE STATUTES;

    G. ENJOIN THE DEFENDANTS FROM TAKING ANY ACTION, OR FROM RETALIATING AGAINST PLAINTIFF FOR BRINGING THIS ACTION.

    H. SUCH OTHER & FURTHER RELIEF AS MAY APPEAR JUST & APPROPRIATE.

DATED THIS 12 DAY OF NOVEMBER, 2018

JOSHUA McGIBONEY HEARBY DECLARES UNDER 28 U.S.C. 1746, & THE PAINS & PENALTIES OF PERJURY THAT THE FOREGOING COMPLAINT IS TRUE & CORRECT IN ALL THINGS.

                                                                    JOSHUA McGIBONEY
                                                                    PLAINTIFF

COMPLAINT AND DEMAND FOR JURY TRIAL - 17