UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

JOSHUA McGIBONEY,

        Plaintiff,

        v.

CORIZON; IDAHO DEPARTMENT OF
CORRECTIONS; IDAHO BOARD OF
CORRECTIONS; KEITH YORDY;
REBEKAH HAGGARD; JEFF ZMUDA;
HENRY ATENCIO; DEBBIE FIELD;
CINDY WILSON; DAVID
McCLUSKY; RONA SIEGERT; COLIN
BROWN; MURRAY YOUNG; RON
SUTHERLIN; MATTHEW
SWEETZER; POVAR TRIPPER;
AARON HOFER; and DOES 1-X,

        Defendants.

Case No. 1:18-cv-00529-DCN

**MEMORANDUM DECISION AND
ORDER**

# I. INTRODUCTION

Before the Court is Plaintiff Joshua McGiboney's Motion for a Temporary

Restraining Order and Preliminary Injunction (Dkt. 10); Motion to Exceed Page Limits

(Dkt. 34); and Motion to Appoint Counsel (Dkt. 38). Having reviewed the record and

briefs, the Court finds that the facts and legal arguments are adequately presented.

Accordingly, in the interest of avoiding further delay, and because the Court finds that the

decisional process would not be significantly aided by oral argument, the Court will

decide the Motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

For the reasons stated below, the Court will GRANT in PART and DENY in PART Plaintiff's request for injunctive relief, GRANT Plaintiff's request to exceed page limits, and DENY Plaintiff's motion for appointment of counsel.

## II. BACKGROUND

Plaintiff Joshua McGiboney (hereinafter "McGiboney") is an inmate incarcerated by the Idaho Department of Correction ("IDOC") at the Idaho State Correctional Institution ("ISCI"). McGiboney has a serious medical condition called arteriovenous malformation ("AVM"). Dkt. 31-3, at 2. In general, AVM is an "abnormal tangle of blood vessels connecting arteries and veins, which disrupts normal blood flow and oxygen circulation." Dkt. 31-2, at ¶ 6. McGiboney suffers from severe pain, loss of strength and mobility, loss of bowel and bladder functions, paralysis that generally confines him to a wheelchair, and other symptoms as a result of his AVM.

In 2011, while incarcerated, McGiboney experienced a sudden onset of midthoracic back pain. Plaintiff was treated at St. Luke's Boise Medical Center and was later diagnosed with a hemorrhage in his spinal cord as a result of his AVM. The neurosurgeon who treated Plaintiff, Dr. Ronald Jutzy, noted surgery was not an option due to risk of permanent stroke to Plaintiff's spinal cord. Dr. Jutzy later reiterated that there was no local surgical option, and that Plaintiff was at a very high risk for paraplegia if he should proceed with elective surgery. Dr. Jutzy also stated his only recommendation "would be to have McGiboney's case reviewed by Dr. Robert Spetzler at Barrow's Neurological Institute in Phoenix, Arizona." *Id*. at ¶ 7.

After the 2011 event, McGiboney filed his first Eighth Amendment claim for

deliberate indifference under 42 U.S.C. § 1983 against his treating physician at the time, Dr. David Agler, and Corrections Corporation of America ("CCA").[1] *McGiboney v. Agler*, 1:13-cv-00214-REB.[2] McGiboney's first suit involved his treatment between May 12, 2011, and May 23, 2011, which was when Dr. Agler first understood that McGiboney had been previously diagnosed with AVM, and the period running from approximately April through October of 2012, when McGiboney's condition began to worsen after initial improvement. *Id.*, Dkt. 59, at 2. Following a trial held on November 7 through November 10, 2016, the jury found Dr. Agler was deliberately indifferent to McGiboney during the time period between May 12, 2011, through May 23, 2011, that McGiboney was harmed as a result, and awarded McGiboney $11,000.00 in compensatory damages. *Id.*, Dkt. 140.[3] The jury also awarded McGiboney $25,000.00 in punitive damages. *Id.*

McGiboney, proceeding *pro se* and *in forma pauperis*, filed the instant action, his second suit asserting claims based on 42 U.S.C. § 1983, on November 20, 2018. McGiboney's complaint was screened pursuant to 28 U.S.C. 1915 and 1915A, and he

---

[1] At the time of McGiboney's first suit, the Idaho State Correctional Center was operated by private contractor CCA, under contract with the State of Idaho. McGiboney initially filed suit against CCA, Dr. Agler, and other prisons officials, but ultimately the suit proceeded against Dr. Agler as the only identified defendant. *McGiboney v. Agler*, 1:13-cv-00214-REB, Dkt. 111.

[2] The Court takes judicial notice of the docket in *McGiboney v. Agler*, 1:13-cv-00214-REB. *See U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (courts may take judicial notice of "proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue").

[3] The jury determined Dr. Agler was not deliberately indifferent to McGiboney's medical needs during the time period between April and October 2012.

was allowed to proceed on his Eighth Amendment and related state law claims against Defendants Corizon and Dr. Rebekah Haggard (for all types of requested relief), Defendant Warden Alberto Ramirez[4] for injunctive relief only, and on his retaliation claim against Defendant Jared Povar.[5] Dkt. 7, at 31-32. All other claims against all other Defendants were dismissed. McGiboney filed a Motion for Temporary Restraining Order and Preliminary Injunction on March 22, 2019. Dkt. 10.

McGiboney's Eighth Amendment claims involve the medical care, or lack thereof, McGiboney has received for his AVM since January 7, 2016.[6] Dkt. 2, at ¶ 23. Due to McGiboney's worsening symptoms, a nondefendant medical provider working for Corizon— the private entity currently providing medical care to Idaho inmates under contract with the IDOC—told McGiboney on January 7, 2016, that he would discuss the possibility of an MRI with then-Regional Medical Director Dr. Murray Young.[7] Id.

On March 2, 2016, McGiboney was transferred from the Idaho State Correctional

---

[4] Defendant Warden Alberto Ramirez, in his official capacity as the current Warden of the ISCI, was substituted for former ISCI Warden Keith Yordy in this action on May 18, 2019. Dkt. 30.

[5] Jared Povar is the correct name of the named Defendant "Povar Tripper." Dkt. 31, at 2.

[6] McGiboney's retaliation claim against Defendant Povar is not at issue for purposes of the instant motion.

[7] McGiboney's Complaint details inadequate medical treatment occurring between January 7, 2016, and May 19, 2018. McGiboney and Defendants address additional instances of medical treatment occurring after the Complaint was filed through the end of May, 2019, in their briefing on the Motion for a Temporary Restraining Order and Preliminary Injunction. In the instant Order, the Court addresses McGiboney's allegations of inadequate medical care occurring between January 7, 2016, and May 23, 2019. *Farmer v. Brennan*, 511 U.S. 825, 846 (1994) (in seeking an injunction, an inmate may rely, in the district court's discretion, on developments that postdate the pleadings. . . as the defendants may rely on such developments to establish that the inmate is not entitled to an injunction.").

Center to the ISCI. McGiboney immediately submitted a health service request for the MRI and a visit with Dr. Young to discuss additional treatment options. Another provider also requested an MRI for McGiboney on April 25, 2016. Four days later, McGiboney received notice that Dr. Young had denied the request. The next time McGiboney attempted to contact Dr. Young, in July of 2016, McGiboney was told Dr. Young was no longer Corizon's Regional Medical Director. Defendant Dr. Haggard replaced Dr. Young as the Corizon Regional Medical Director for IDOC in the summer of 2016. Dkt. 31-2, at ¶ 2.

In September 2016—nine months after the initial recommendation for an MRI— Dr. Matthew Sweetzer examined McGiboney and determined he needed "imaging to see [the] extent of [his] condition & [a] neuro consult[.]" Dkt. 2, at ¶ 33. A nondefendant nurse then pulled McGiboney's wheelchair out of Dr. Sweetzer's office, stating that McGiboney's time was up. *Id*. Three weeks later, McGiboney was informed that Dr. Sweetzer no longer worked at the prison and that McGiboney must start over and re-submit health service requests.

McGiboney eventually received an ultrasound on his left leg on October 24, 2016, at St. Luke's hospital. The St. Luke's doctor, Dr. Reada, determined that additional imaging was needed. *Id*. at 6. At McGiboney's next appointment, with Defendant Povar in December 2016, Defendant Povar told McGiboney that an MRI had been ordered and that McGiboney would be prescribed medication. Over three months later, McGiboney had still not had the MRI or been prescribed medication. At that point, another provider confirmed that McGiboney would be given an MRI and a follow-up with Dr. Ronald

Sutherlin. *Id*. McGiboney was not given the MRI, nor was he evaluated by Dr. Sutherlin.[8]

On April 13, 2017, Defendant Povar informed McGiboney that Defendant Haggard had once again denied Povar's request for an MRI, despite Dr. Reada's October 2016 recommendation for additional imaging. Defendant Haggard contends the MRI request was initially denied because McGiboney "had reported neuro function which is not consistent with AVM progression." Dkt. 31-2, at ¶ 10. However, Defendant Haggard agreed an MRI was necessary by October 2017, when McGiboney experienced worsening symptoms. *Id*.

McGiboney finally received an MRI in November, 2017, which "revealed progression of distal spinal cord syrinx below T7-T11 and L3-4 advanced degenerative disc disease with severe right foraminal stenosis." *Id*. at ¶ 11. Based on the new MRI findings, Neurosurgeon Dr. Paul Montalbano recommended evaluation by a vascular neurosurgeon specialist, Dr. Ondrej Choutka. *Id*. While waiting for his appointment with Dr. Choutka, McGiboney sustained bleeding pressure sores because the seat of his wheelchair was "sagging down onto metal bars" and "busting [his] skin open." Dkt. 2, at ¶ 52. McGiboney claims that "IDOC's restricted policies forced him to sit in blood & urine with open wounds & refus[ed] him access to showers all night & no laundry all week." *Id*. McGiboney requested a new wheelchair. Although the request was initially

---

[8] Defendants do not address McGiboney's medical care between January of 2016 and March of 2017, and do not address McGiboney's specific claims of inadequate treatment during this time period in their Response to McGiboney's Motion for a Temporary Restraining Order and Preliminary Injunction. Unless otherwise referenced, the Court accordingly presents the facts as alleged by McGiboney between January of 2016 and March 2017, when Defendants first offer a conflicting version of the facts. Dkt. 31-2, at ¶ 10.

denied, McGiboney received a new wheelchair on March 27, 2018. McGiboney contends that his new chair is too big, and that he is "unable to effectively propel" himself with it. *Id*. at ¶ 69. Defendants do not respond to McGiboney's claims regarding the injuries his first wheelchair caused or his need for a new wheelchair, nor his claims that he was denied access to showers and laundry after his pressure sores ruptured.

Three months after Dr. Montalbano recommended McGiboney evaluation by a vascular neurosurgeon, McGiboney was seen by Dr. Choutka on February 1, 2018. Dr. Choutka noted baseline weakness in McGiboney's left leg but worsening symptoms in his right leg. Dkt. 31-2, at ¶ 12. Dr. Choutka recommended a spinal angiogram, which was performed. *Id*. On February 27, 2018, McGiboney returned to Dr. Choutka for a follow-up visit. *Id*. The two discussed various treatment options, and ultimately decided to proceed with endovascular treatment of McGiboney's AVM, "followed by posterior thoracic hemilaminectomy and placement of syringo-subarachnoid shunt, combined with foraminotomy if significant L3 nerve root compression exist[ed]." *Id*.

McGiboney had the aforementioned surgeries in March, 2018, during which Dr. Dallas Peck embolized two aneurysms and Dr. Choutka performed a foraminotomy for nerve root decompression and inserted a shunt without complication. *Id*. at ¶ 13. Because McGiboney was unable to urinate following his surgeries, he was prescribed Urecholine; however, Corizon failed to provide McGiboney with this medication for two months. Dkt. 2, at ¶¶ 65, 68, 73. By the time McGiboney finally received Urecholine on May 19, 2018, "it was too late to stimulate [his] bladder to normal function," and McGiboney must now "use catheters for the rest of [his] life" in order to urinate. *Id*.; *see also* Dkt. 36-

4, at 15, ¶ 13. Defendants do not respond to McGiboney's allegations regarding their failure to provide him with Urecholine following his surgeries.

Ten days after his March surgeries, Defendant Haggard told McGiboney that Corizon had denied him a medical mattress "despite [McGiboney's] bruised, atrophied leg & open pressure sores." Dkt. 2, at ¶ 71. McGiboney was also told Corizon was "out of catheters" and that he would have to rinse off his used catheters and re-insert them, exposing himself to a risk of "painful & dangerous kidney infections." *Id*. at 11. Corizon also had problems keeping bathing cloths in stock—cloths that McGiboney needed daily. When Corizon was out of such cloths, McGiboney "had to sit in human waste until they got some." *Id*. at ¶ 56. Defendants do not respond to McGiboney's allegations regarding being denied a medical mattress, or access to new catheters and bathing cloths. However, Defendants note McGiboney had a follow-up visit with Dr. Choutka after his surgeries, at which time it was noted McGiboney was "doing wonderful" and was "happy with his progress." Dkt. 31-2, at ¶ 13.

At his follow-up visit, Dr. Choutka ordered that McGiboney be provided with aggressive physical therapy. Dkt. 31-3, at 30. Defendant Haggard referred McGiboney to St. Alphonsus Rehabilitation Services ("STARS") to undergo rehabilitation. Dkt. 31-2, at ¶ 14. McGiboney underwent physical therapy from April 6, 2018, until he was discharged on November 21, 2018, when his progress plateaued. [9] Dkt. 31-2, at ¶ 14.

---

[9] On June 21, 2018, Dr. Peck performed a second embolization of a thoracic spinal arterial venous malformation on McGiboney. *Id*. at ¶ 15.

After being discharged from therapy at STARS on November 21, 2018, McGiboney continued physical therapy at the prison. On December 26, 2018, he had a spinal MRI, and on March 22, 2019, a CT angiogram. *Id*. at ¶ 16. McGiboney's March 22, 2019, CT angiogram with Dr. Mathew Pond identified a recurrence of "the known spinal arteriovenous malformation along the inferior aspect of the previously embolized AVM nidus with the arterial feeder arising from the right T9 segmental artery." Dkt. 31-3, at 42. McGiboney's recurring malformation measured approximately two centimeters in size, with early drainage visible, requiring embolization. *Id*. at 41-42. McGiboney contends that at two centimeters, his new malformation is twice the size of any previous malformations which have caused him to hemorrhage and suffer partial paralysis. Dkt. 35, at 6.

Although Defendants represent that a "new consultation request for neurosurgery and interventional radiology follow-up" was placed as a result of Dr. Pond's report, and "is in the process of being scheduled," the follow-up had not been scheduled as of May 23, 2019, two months after Dr. Pond issued his report. Dkt. 31-2, at ¶ 16; Dkt. 31-3, at 45. It appears the neurosurgery and interventional radiology follow-up still have not been scheduled as of the date of this decision, more than a month later.[10] McGiboney is in imminent danger of hemorrhaging as a result of his spinal arteriovenous malformation, which could cause stoke, additional paralysis, coma or death, and requires embolization.

---

[10] Defendants have not notified the Court to the contrary.

Dkt. 36-2, at ¶ 7; Dkt. 31-3, at 42.

McGiboney filed his Motion for a Temporary Restraining Order and Preliminary Injunction on March 18, 2019.[11] In his motion, McGiboney seeks an injunction against Defendants to ensure he "receives adequate and meaningful medical care and treatment to sustain his life." Dkt. 10-1, at 1. Defendants oppose the motion on a number of grounds addressed below.

### III. LEGAL STANDARD

The primary purpose of a preliminary injunction is to prevent irreparable harm which may occur before a decision on the merits can be rendered by the trial court. A preliminary injunction "is an extraordinary remedy never awarded as a matter of right." *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 24 (2008). A preliminary injunction may take two forms. "A prohibitory injunction prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co*., 571 F.3d 873, 878 (9th Cir. 2009) (internal alterations and quotation marks omitted). A mandatory injunction orders a party to take action. *Id*. at 879. Because a mandatory injunction "goes well beyond simply maintaining the status quo pendite lite" it is particularly disfavored. *Id*. "In general, mandatory injunctions 'are not granted unless extreme or very serious damage will result and are not issued in doubtful cases where the injury complained of is capable of

---

[11] This case was later transferred to the undersigned Judge, who allowed Defendants until May 23, 2019, to respond to McGiboney's motion.

compensation in damages.'" *Id*. (quoting *Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1980)). Whether to grant or deny a temporary restraining order or preliminary injunction is a matter within the court's discretion. *Koller v. Brown*, 224 F. Supp. 3d 871, 875 (N.D. Cal. 2016) (citing *Miss Universe, Inc. v. Flesher*, 605 F.2d 1130, 1132-33 (9th Cir. 1979)).

A party seeking a preliminary injunction must establish: (1) a likelihood of success on the merits; (2) that the moving party will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities weighs in favor of the moving party; and (4) that an injunction will serve the public's interest. *Winter*, 555 U.S. at 20.

In cases like this one, which are governed by the Prison Litigation Reform Act ("PLRA"), "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). The court must also "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief." *Id*. The Ninth Circuit has held that although the PLRA affects the type of prospective injunctive relief that may be awarded, "it has not substantially changed the threshold findings and standards required to justify an injunction." *Gomez v. Vernon*, 255 F.3d 1118, 1129 (9th Cir.2001) (affirming grant of prospective and retrospective relief as least restrictive means to correct constitutional violations). Unless the court orders otherwise after making specific findings required by the statute, "preliminary injunctive relief shall automatically expire on the date that is 90 days after its entry[.]" 18 U.S.C. § 3626(a)(2).

## IV. EVIDENCE CONSIDERED

A motion for preliminary injunction must be supported by "[e]vidence that goes beyond the unverified allegations of the pleadings." *Fidelity Nat. Title Ins. Coverage v. Castle*, 2011 WL 5882878, at *3 (N.D. Cal. 2011) (citation omitted). However, a "district court may rely on otherwise inadmissible evidence, including hearsay evidence." *Id.*; *see also Flynt Distrib. Co., Inc., v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) ("The urgency of obtaining a preliminary injunction necessitates a prompt determination. . . . The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial."); *Ross-Whitney Corp v. Smith Kline & French Lab.*, 207 F.2d 190, 198 (9th Cir. 1953) (holding preliminary injunction may be granted on affidavits).

For purpose of deciding the present motion, the Court relies on the following evidence submitted by McGiboney: the averments in the complaint; the declarations submitted in support of McGiboney's Motion and Reply Brief; documents that evidence the recommendations made by Corizon medical staff and outside providers regarding McGiboney's medical condition and treatment assessment; and documents that evidence McGiboney's administrative grievances and responses thereto. The Court also considers the declaration of Defendant Haggard and evidence in support submitted by Defendant Haggard in her response to McGiboney's Motion, as well as various prior orders in this case and in Plaintiff's prior § 1983 case, *McGiboney v. Agler*, 1:13-cv-00214-REB.

# V.    ANALYSIS

## A. Likelihood of Success on the Merits

To obtain a preliminary injunction requiring Defendants to provide specific medical care, McGiboney must first establish that he is likely to succeed on the merits of his Eighth Amendment claims. McGiboney contends Defendants are liable under 42 U.S.C. § 1983 for repeatedly delaying or withholding necessary treatment for his AVM (including appropriate diagnostic imaging, surgical intervention and emergency treatment), and by withholding essential medication and medical equipment in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.

Although, as a consequence for their own actions, prisoners may be deprived of their some of their rights fundamental to liberty, they "retain the essence of human dignity inherent in all persons. Respect for that dignity animates the Eighth Amendment prohibition against cruel and unusual punishment." *Brown v. Plata*, 563 U.S. 493, 510 (2011). Because they are incarcerated, prisoners are dependent on the State for shelter, food, clothing, and medical care. "A prison that deprives prisoners of basic sustenance, including adequate medical care, is incompatible with the concept of human dignity and has no place in civilized society." *Id*. Thus, deliberate indifference "to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks and citation omitted); *Hutchinson v. United States*, 838 F.2d 390, 392 (9th Cir. 1988). The Supreme Court has identified two forms of deliberate indifference: when prison officials deny, delay, or intentionally interfere with medical treatment, or by the

way in which prison physicians provide medical care. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988) (citing *Estelle*, 429 U.S. at 104-05).

In the Ninth Circuit, the test for deliberate indifference consists of two parts. First, the plaintiff must show a "serious medical need" by demonstrating that failure to treat her or his condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle*, 429 U.S. at 104). A serious injury is not the type of "routine discomfort [that] is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Instead, examples of a "serious medical need" include:

> [F]ailure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain[;]. . . [t]he existence of an injury that a reasonable doctor or patient would find important and worth of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain[.]

*McGuckin v. Smith*, 947 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Tech., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (internal citations omitted) .

Here, it is clear McGiboney has a serious medical need. Defendants admit that McGiboney has a new arteriovenous malformation that requires consultation for neurosurgery and interventional radiology. Dkt. 32-2, at ¶ 16. When left untreated, McGiboney has suffered spinal hemorrhage and potentially irreversible consequences as a result, including the partial paralysis of his leg and abdomen caused by the hemorrhage he experienced in 2011. *McGiboney v. Agler*, 1:13-cv-00214-REB, Dkt. 59, at 2. McGiboney also alleges his symptoms from AVM have been worsening, causing, among

other issues, excruciating pain, pressure sores, loss of strength, sleep, mobility, and incontinence. Dkt. 2, at ¶ 22. McGiboney alleges his pain is so agonizing he "cries himself to sleep" and at times "loses consciousness." Dkt. 36-2, at ¶ 2. In addition to his need for immediate treatment, McGiboney's significant pain demonstrates serious medical need. *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) ("chronic and substantial pain" is an example of serious medical need).

Second, a plaintiff must demonstrate that the defendant's response to a serious medical need was deliberately indifferent by showing "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096. The requirement of a purposeful act/failure to respond is intended to preclude a finding of deliberate indifference for accidents or inadvertent or even negligent failure to provide medical care. *Estelle*, 429 U.S. at 105; *Hutchinson*, 838 F.2d at 394. Thus, Eighth Amendment suits against prison officials must satisfy a "subjective" requirement, demonstrating that prison officials "knowingly and unreasonably" disregarded "an objectively intolerable risk of harm to the plaintiff." *Farmer v. Brennan*, 511 U.S. 825, 846 (1994).

Neither a difference of opinion between a prisoner and prison medical authorities regarding treatment, nor a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another, is sufficient to establish deliberate indifference. *Toguchi v. Chung*, 391 F.3d 1051, 1059-60 (9th Cir. 2004); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). However, a "prison official acts with deliberate indifference when he ignores the instructions of the prisoner's

treating physician or surgeon." *Wakefield v. Thompson*, 177 F.3d 1160, 1165 (9th Cir. 1999). The inconsistencies and gaps in McGiboney's medical treatment suggest McGiboney will likely establish Defendants acted with deliberate indifference to his serious medical needs. In addition to Defendants' failure to ensure McGiboney immediately receives the neurosurgery and interventional radiology appointments Dr. Pond recommended in March of this year to prevent imminent hemorrhage, Defendants Corizon and Dr. Haggard have repeatedly denied McGiboney the imaging recommended by their own and outside providers, and failed to provide basic medical necessities (such as unused catheters and bathing cloths) to alleviate McGiboney's symptoms.

As detailed above, despite multiple requests that McGiboney receive an MRI from both Corizon's own providers and outside physicians, Defendants delayed in getting McGiboney an initial MRI from January 7, 2016, to November of 2017. Defendants' only response to this nearly two-year delay is Defendant Haggard's claim that she denied an MRI in March of 2017, because McGiboney "had reported improved neuro function which is not consistent with AVM progression." Dkt. 31-2, at ¶ 10. Defendants ignore McGiboney's claims that he first sought an MRI on January 7, 2016, repeated this request throughout the spring and summer of 2016, that outside providers including Dr. Sweetzer and Dr. Reada concluded an MRI was necessary in the fall of 2016, and that Defendant Povar told Plaintiff an MRI had been ordered in the winter of 2016. Yet, although McGiboney continued to plead for an MRI throughout the next year, Defendants failed to even order an MRI until October of 2017.

Defendants also ignore McGiboney's significant claims of neglect and a lack of

basic medical treatment between 2016 and the present. Defendants do not respond to McGiboney's assertions that he sustained bleeding pressure sores as a result of his first wheelchair and cannot properly move due to the size of his second wheelchair, do not address the instances where McGiboney was forced to sit in his own waste and blood due to a shortage of bath cloths and denied access to showers or laundry, and ignore McGiboney's contentions that he has been forced to reuse catheters and denied prescribed medications. Instead, Defendants argue that McGiboney cannot show they have acted with deliberate indifference to his serious medical needs because he has "[a]t most. . . establish[ed] a disagreement with the medical care being provided, which is insufficient to establish deliberate indifference." Dkt. 31, at 10 (citing *Toguchi*, 391 F.3d at 1058). The nearly two-year delay in providing McGiboney with an MRI after he initially complained of worsening symptoms in January of 2016, and the significant neglect McGiboney has suffered during this time cannot be explained away as a mere difference in opinion. Where, as here, there has been a repeated failure to treat an inmate, a finding of deliberate indifference is supported. *McGuckin*, 974 F.2d at 1060-61 (a finding that the defendant repeatedly failed to treat an inmate properly or that a single failure was egregious strongly suggests that the defendant's actions were motivated by deliberate indifference to the prisoner's medical needs).

Defendants also outline the treatment McGiboney *has* received to suggest the Corizon Defendants have been "consistently responsive" to McGiboney's medical needs. *Id*. at 12-14 (citing *Caplinger v. CCA*, 999 F. Supp. 2d 1203, 1215 (D. Idaho 2014). Defendants seem to believe that simply because McGiboney has received some treatment

it is impossible to conclude that they were indifferent to his medical needs. But providing some treatment does not inoculate Defendants from any Eighth Amendment violations. *Carmichael v. Aranas*, 2017 WL 1712518, at *4 (D. Nev. 2017); *see also De'lonta v. Johnson*, 708 F.3d 520, 526 (4th Cir. 2013) ("Just because [defendants] have provided [a prisoner] with some treatment. . . it does not follow that they have provided her with *constitutionally adequate* treatment." (emphasis in original)); *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989) (a plaintiff alleging deliberate medical indifference "need not prove complete failure to treat."). McGiboney has shown several instances that establish, for purpose of the instant motion, that Defendants, who were aware of his AVM and need for further treatment, failed to adequately respond to his pain and treatment needs.

To demonstrate harm caused by deliberate indifference, a prisoner need not show that the harm was substantial, however, such a showing would provide support for the inmate's claim of deliberate indifference. *McGuckin*, 974 F.2d at 1060. In addition to the inhumane conditions McGiboney has suffered, he has established tangible substantial harm as a result of Defendants' indifference. For instance, because Defendants failed to give McGiboney Urecholine for two months after McGiboney's surgeon prescribed it, McGiboney alleges he is permanently incontinent and must rely on catheters for the rest of his life. Defendants do not address, let alone attempt to explain, why McGiboney was not provided with Urecholine and other medications ordered by outside providers. Nor do Defendants explain why McGiboney still hasn't received a consult for embolization when they agree such treatment is necessary, when McGiboney has suffered spinal hemorrhage

when denied such treatment in the past, and when further delay could result in catastrophic injury or even death.

Rather than address McGiboney's claims of deliberate indifference, Defendants focus on the form of relief McGiboney requests. Specifically, McGiboney contends:

> After an angiogram, a local neurosurgeon referred [McGiboney] to see Dr. Spetzler, a specialist at Barrow's Institute located Phoenix, Arizona.

> Defendants have refused to adhere to recommendations of the neurosurgeon and send [McGiboney] to Barrow's Institute to be treated.

> Refusing to comply with the neurosurgeon's recommendations and delaying all treatment has caused [McGiboney] irreparable harm and has placed him in imminent danger of life and limb.

> [McGiboney] believes Defendants will allow him to degenerate, losing his limbs & life before they spend money to provide the complex level of off-site specialist treatment he must have. So the only way to prevent this is to order McGiboney's release from confinement so he can go get his own medical care in the community.

Dkt. 10-1, at 2, 4.

Defendants are correct that the Court cannot award the aforementioned relief. A civil rights action brought pursuant to 42 U.S.C. § 1983 challenges the conditions of a prisoner's confinement and may seek damages. By contrast, a petition for writ of habeas corpus is the exclusive remedy for a prisoner seeking an immediate or speedier release from prison.[12] *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). However, although

---

[12] Given its conclusion that medical parole is not available as injunctive relief in this suit, the Court declines to address Defendants' claim that the relief sought is barred by claim preclusion and/or issue preclusion, as well as Defendants' arguments regarding the impropriety of ordering medical parole. Dkt. 31, at 5-10. Defendants' claim/issue preclusion argument is also misplaced, as a prison can't avoid liability for subsequent inadequate medical treatment of a prisoner simply because that prisoner

McGiboney requested release from confinement in his Motion for Temporary Restraining Order and Preliminary Injunction, he also seeks an order to "ensure [he] receives adequate and meaningful medical care and treatment to sustain his life." Dkt. 10-1, at 1. It is within the Court's authority to order such relief.[13] *See, e.g., Farmer*, 511 U.S. at 846 (if the court finds the Eight Amendment's requirements satisfied, it may grant appropriate injunctive relief); *Hutto v. Finney*, 437 U.S. 679 (1978) (upholding injunctive order designed to halt "an ongoing violation" in prison conditions that included extreme overcrowding, violence, insufficient food and unsanitary conditions).

Because McGiboney has established Defendants have repeatedly and significantly delayed and/or failed to provide medical treatment despite their knowledge of McGiboney's serious medical condition and need for treatment, and that he has suffered significant harm as a result, the Court finds that McGiboney has shown a likelihood of success on his Eighth Amendment claim of deliberate indifference.[14]

---

previously prevailed against the prison on a deliberate indifference claim.

[13] After a trial on the merits, the Court may ultimately be able to award additional relief, such as the transfer of custody McGiboney requests in his Reply, to rectify "the conditions of [McGiboney's] confinement which would not change the duration of physical imprisonment." *See Abdul-Hakeem v. Koehler*, 910 F.2d 66, 669 (2d Cir. 1990). At this early stage of the proceedings, however, it would conflict with the PRLA's requirement that preliminary injunctive relief be the least intrusive means necessary to correct the harm requiring relief. 18 U.S.C. § 3626(a)(2).

[14] Defendants' argument regarding McGiboney's purported inability to establish Corizon's liability under *Monell v. Dep't of Social Servs. of New York*, 436 U.S. 658, 694 (1978), and the need for expert testimony to establish a medical malpractice claim, are premature at this stage of the proceedings. Dkt. 31, at 15. Plaintiff is required to establish a *likelihood* of success on the merits, not success on the merits as to each claim and against each defendant. *See, e.g., Farmer*, 511 U.S. at 846 (distinguishing between showing required at the injunction stage versus that necessary to defeat summary judgment). Defendant Ramirez's argument in response to McGiboney's request for injunctive relief is similarly rejected as premature. *See*, Dkt. 32, at 2-3. 1032, 1036 (9th Cir. 1999).

## B. Irreparable Injury

McGiboney has also established that he is currently suffering irreparable harm and that it will likely continue in the absence of a preliminary injunction. McGiboney suffers agonizing physical pain, swelling, paralysis and incontinence, as well as severe anxiety and depression, due to Defendants' continued failure to adequately treat his AVM. *See, e.g.*, Dkt. 36-2, at ¶¶ 1-5, 7, 11. In addition to physical pain, emotional distress, anxiety, depression and other psychological problems can constitute irreparable injury. *Norsworthy v. Beard*, 87 F. Supp. 3d 1164, 1192 (N.D. Cal. 2015). McGiboney is also at risk of an imminent hemorrhage and potentially catastrophic consequences if his new malformation is not treated. McGiboney notes his brother died from a hemorrhage caused by his own AVM. Dkt. 36-2, at ¶ 7.

Defendants respond to McGiboney's claim that he will be irreparably injured in the absence of injunctive relief by again focusing exclusively on McGiboney's request for medical parole, rather than on his concurrent request for an order ensuring he receives adequate medical care and treatment to sustain his life. Dkt. 31, at 16. Again, however, Defendants admit they have received authorization for new off-site neurosurgery and interventional radiology consultations. In light of Dr. Pond's findings regarding McGiboney's recurrence of a large malformation requiring embolization, and the significant harm McGiboney has suffered when he has hemorrhaged in the past, there is simply no excuse for Defendants' continued delay in scheduling such appointments.

Further, the continuation of McGiboney's suffering as a result of Defendants' inadequate medical care constitutes irreparable injury. *See, e.g., Norsworthy*, 87 F. Supp.

3d at 1193 (finding the continuation of plaintiff inmate's suffering as a result of defendants' failure to treat her gender dysphoria constituted irreparable injury whether it was the first month plaintiff had suffered or the hundredth); *McNearney v. Washington Dep't of Corrections*, 2012 WL 3545267, at *14 (W.D. Wash. 2012) (finding a likelihood of irreparable injury where plaintiff's medical condition predated her incarceration and had not worsened, but the evidence showed that she continued to suffer unnecessary pain due to defendants' inadequate treatment plan). Given the years of apparent neglect McGiboney has suffered as a result of Defendants' failure to provide adequate medical treatment to alleviate the symptoms of his AVM, McGiboney has established he will endure irreparable harm absent injunctive relief.

Finally, the deprivation of McGiboney's constitutional rights under the Eighth Amendment is itself sufficient to establish irreparable harm. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *Fyock v. City of Sunnyvale*, 25 F. Supp. 3d 1267, 1282 (N.D. Cal. 2014) ("Irreparable harm is presumed if plaintiffs are likely to succeed on the merits because a deprivation of constitutional rights always constitutes irreparable harm."). Accordingly, the Court finds that McGiboney has demonstrated that he will suffer irreparable harm in the absence of injunctive relief.

### C. Balance of the Equities

Defendants cite the heightened requirements imposed by the PLRA to argue the balance of the equities weighs against granting McGiboney injunctive relief. Dkt. 31, at 8-9 (citing 18 U.S.C. § 3626(a)(2)). Defendants suggest "public safety and the operation

of the criminal justice system are serious concerns in this matter. . . . In light of the drastic relief sought (release from prison) [McGiboney's] Motion and relief sought is not sufficiently narrowly drawn, in violation of the PRLA." *Id*. Defendants again focus on one form of relief requested by McGiboney in his Motion and ignore his pleas for adequate medical treatment.

The only burden placed on Defendants by requiring them to immediately schedule neurosurgery and radiology appointments is to require them to follow through with the treatment *they have already deemed necessary and obtained authorization to schedule*. The only burden place on Defendants by requiring them to treat Plaintiff's AVM with appropriate pain management, comfort, and hygiene measures is to require them to comply with *their constitutionally imposed obligation to provide adequate medical care*. On the other side of the scale, McGiboney faces continued suffering, increased paralysis and loss of bladder and other functions, and even death if adequate medical treatment continues to be withheld. The balance of the equities clearly weighs in McGiboney's favor.

### D.  Public Interest

Defendants argue granting the relief sought would not be in the public's interest "based on the violent nature of [McGiboney's] crimes and the concerns cited by the Commission of Pardons and Parole[.]" Dkt. 31, at 16. Since the Court cannot award medical parole, such concerns do not apply. Absent such concerns, and because "it is always in the public interest to prevent the violation of a party's constitutional rights," the

public interest factor of the test for preliminary injunctive relief favors McGiboney. *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012).

### E. PLRA

McGiboney has established that he is likely to succeed on the merits of his Eighth Amendment claim, that he is likely to suffer irreparable harm without an injunction, that the balance of the equities tips in his favor, and that an injunction is in the public interest. An injunction granting Plaintiff access to adequate medical care, including immediate neurosurgery and radiology consultations, treatment recommended by such providers, and consistent medical treatment to alleviate further suffering, is narrowly drawn, extends no further than necessary to correct the constitutional violation, and is the least intrusive means necessary to correct the violation. 18 U.S.C. § 3626(a)(2). The relief the Court orders merely requires Defendants to comply with their constitutional obligation to provide McGiboney with adequate medical care and alleviate his needless pain and suffering. Further, there is no evidence that granting this relief will have "any adverse impact on public safety or the operation of the criminal justice system." 18 U.S.C. § 3626(a)(2).

### F. Additional Motions

1. *Motion to Exceed Pages*

McGiboney requests that the Court allow him to condense his Reply to Defendants' responses to the Motion for a Temporary Restraining Order and Preliminary Injunction into one overlength reply brief. Dkt. 34. Defendants have not objected to the

motion and, given the standard for liberally construing documents filed by pro se litigants, the motion is appropriately GRANTED. *Estelle*, 429 U.S. at 106.

## 2. *Motion to Appoint Counsel*[15]

In proceedings *in forma pauperis*, the district court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). In his Motion to Appoint Counsel, McGiboney states he "needs counsel expedited, limited to the TRO hearing." Dkt. 38, at 2. The Court vacated the TRO hearing pursuant to Local Rule 7.1(d)(1)(B). Accordingly, McGiboney's Motion for Appointment of Counsel appears moot.

To the extent McGiboney seeks counsel beyond the TRO hearing, the Court may request counsel under 28 U.S.C. § 1951(d) only under "exceptional circumstances." *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). "A finding of exceptional circumstances requires an evaluation of both 'the likelihood of success on the merits and the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved.'" *Id*. (quoting *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986)).

In his filings, McGiboney has "demonstrated sufficient writing ability and legal knowledge to articulate his claim[s]." *Id*. Indeed, McGiboney has shown he is fully capable of legibly articulating the facts and circumstances relevant to his Eighth

---

[15] Defendants have not opposed the Motion to Appoint Counsel.

Amendment claim by obtaining injunctive relief. McGiboney's Eighth Amendment claim is also not overly "complex." *Argyeman v. Corr. Corp. of Am*., 390 F.3d 1101, 1103 (9th Cir. 2004). As such, the Court finds "exceptional circumstances" do not currently exist and denies McGiboney's Motion to Appoint Counsel without prejudice.

## VI.    ORDER

For the reasons stated herein:

1. McGiboney's Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. 10) is **DENIED** with respect to McGiboney's request for medical parole. McGiboney's Motion is **GRANTED** as follows:

   (a) Defendants shall immediately schedule interventional radiology and neurosurgery consultation appointments for McGiboney. McGiboney must attend such follow-up appointments no later than twenty-one (21) days from the date of this order;[16]

   (b) Defendants must schedule and ensure McGiboney receives all surgery and/or other medical intervention recommended at the aforementioned neurosurgery and radiology appointments on the treating physician's earliest available date;

---

[16] Lest Defendants be tempted to argue they cannot obtain such appointments within such a tight timeframe, the Court notes they have had nearly four months to do so since the need for such follow-up was identified. The Court will not view requests for additional time to schedule McGiboney's appointments favorably.

(c) Defendants must immediately provide McGiboney with adequate pain, hygiene, and comfort measures, including all-prescribed medication, an appropriately-sized wheelchair, new (unused) catheters, a medical mattress, and bath cloths as needed;

(d) This preliminary injunction applies to the Defendants named in this action and their officers, agents, servants, employees, and attorneys. Fed. R. Civ. P. 65(d)(2)(A), (B);

(e) The preliminary injunction shall remain in place pending a full determination of McGiboney's claims upon the merits or upon further order of the Court.

2. McGiboney's Motion to Exceed Pages (Dkt. 34) is **GRANTED**;

3. McGiboney's Motion for Appointment of Counsel (Dkt. 38) is **DENIED** without prejudice.

DATED: July 11, 2019

David C. Nye
Chief U.S. District Court Judge