UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

JOSHUA McGIBONEY,

      Plaintiff,

      v.

CORIZON; IDAHO DEPARTMENT OF
CORRECTION; IDAHO BOARD OF
CORRECTION; KEITH YORDY;
REBEKAH HAGGARD; JEFF ZMUDA;
HENRY ATENCIO; DEBBIE FILED;
CINDY WILSON; DAVID
McCLUSKY; RONA SIEGERT; COLIN
BROWN; MURRAY YOUNG; RON
SUTHERLIN; MATTHEW
SWEETZER; JARED POVAR; AARON
HOFER; and DOES 1-X,

      Defendants.

Case No. 4:18-cv-00529-DCN

**MEMORANDUM DECISION AND
ORDER**

# I. INTRODUCTION

Pending before the Court is Defendants Corizon, Rebekah Haggard, and Jared
Povar's (collectively "Defendants") "Motion to Amend or Alter the Court's July 11, 2019
Order" (Dkt. 43) and Motion for Leave to File Excess Pages (Dkt. 44).

Having reviewed the record and briefs, the Court finds that the facts and legal
arguments are adequately presented. Accordingly, in the interest of avoiding further delay,
and because the Court finds that the decisional process would not be significantly aided by
oral argument, the Court will decide the motions without oral argument. Dist. Idaho Loc.

Civ. R. 7.1(d)(1)(B).

For the reasons stated below, the Court will GRANT IN PART and DENY IN PART Defendants' request to amend or alter the July 11, 2019 Order, and GRANT Defendants' request to exceed page limits.

## II. BACKGROUND

The factual background of this case is set forth in the Court's July 11, 2019 preliminary injunction and will not be repeated here. Dkt. 40. In brief, McGiboney is an inmate incarcerated by the Idaho Department of Correction ("IDOC"). McGiboney has a serious medical condition called arteriovenous malformation ("AVM"), which causes him to suffer severe pain, loss of strength and mobility, loss of bowel and bladder functions, paralysis that generally confines him to a wheelchair, and other symptoms.[1]

McGiboney, proceeding (at that time) pro se and *in forma pauperis*, filed the instant action—his second suit asserting claims based on 42 U.S.C. § 1983 based on inadequate medical treatment while in prison—on November 20, 2018. After his Complaint was screened pursuant to 28 U.S.C. 1915 and 1915A, McGiboney was allowed to proceed on his Eighth Amendment and related state law claims against Defendants.

McGiboney filed a Motion for Temporary Restraining Order and Preliminary Injunction on March 18, 2019 ( "McGiboney's Motion"). Dkt. 10. As further explained below, the Court granted McGiboney's Motion in part and denied the Motion in part and

---

[1] In general, AVM is an "abnormal tangle of blood vessels connecting arteries and veins, which disrupts normal blood flow and oxygen circulation." Dkt. 31-2, at ¶ 6.

ordered certain preliminary injunctive relief. Although it denied McGiboney's request for medical parole, the Court ordered Defendants to provide McGiboney with adequate medical treatment for his AVM after finding McGiboney had established a likelihood of success on the merits of his Eighth Amendment claims, that he would suffer irreparable injury in the absence of injunctive relief, that the balance of the equities weighed in his favor, and that the public interest would be served by granting relief to ensure he received adequate medical care. *Id*. at 13-24.

On August 8, 2019, Defendants filed the instant Motion to Amend or Alter the July 11, 2019 Order ("Motion to Amend"). Dkt. 43. Defendants seek reconsideration of both the Court's factual findings and the injunctive relief awarded. The Motion to Amend has been fully briefed and is ripe for the Court's review.

### III. LEGAL STANDARD

The Ninth Circuit has held that a motion for reconsideration of a preliminary injunction should be treated as a motion to alter or amend a judgment under Federal Rule of Civil Procedure 59(e). *Sierra On-Line, Inc. v. Phoenix Software, Inc*., 739 F.2d 1415, 1419 (9th Cir. 1984). Rule 59(e) applies to "[a]ny motion to alter or amend a judgment," and, under Federal Rule of Civil Procedure 54(a), a judgment is defined to include "any order from which an appeal lies." *Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1123 n. 6 (9th Cir. 2005). Because 28 U.S.C. § 1292(a)(1) establishes appellate jurisdiction over an appeal from a preliminary injunction, a preliminary injunction order is a "judgment" within the terms of Rule 59(e). *Id*.

Reconsideration of a judgment under Rule 59(e) is an "extraordinary remedy, to be

used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 935, 945 (9th Cir. 2003) (citation omitted). As a result, the Ninth Circuit has identified three reasons sufficient to warrant a court's reconsideration of a prior order: (1) an intervening change in controlling law; (2) the discovery of new evidence not previously available; or (3) the need to correct clear or manifest error in law or fact, to prevent manifest injustice. *Id*; *see also 389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999). "Whether or not to grant reconsideration is committed to the sound discretion of the court." *Navajo Nation v. Confederated Tribes and Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003) (citing *Kona Enter., Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000)).

Federal Rule of Civil Procedure 54(b) governs a motion to vacate or dissolve a preliminary injunction. *Credit Suisse*, 400 F.3d at 1124. Rule 54(b) provides that a district court can modify an interlocutory order "at any time" before entry of a final judgment, and the Ninth Circuit has "long-recognized 'the well-established rule that a district judge always has power to modify or to overturn an interlocutory order or decision while it remains interlocutory.'" *Id*. (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc*., 316 F.2d 804, 809 (9th Cir. 1963)).

While a motion made under Rule 59(e) seeks to relitigate the issues underlying the original preliminary injunction, a motion under Rule 54(b) "is meant only to relieve inequities that arise after the original order." *Id*. (quoting *Favia v. Indiana Univ. of Penn*., 7 F.3d 332, 337 (3d Cir. 1993)). Modification of an injunction pursuant to Rule 54(b) "is proper only when there has been a change of circumstances between entry of the injunction

and the filing of the motion that would render the continuance of the injunction in its original form inequitable." *Favia*, 7 F.3d at 337 (citation omitted).

## IV. ANALYSIS

Although Defendants cite both Rule 54(b) and 59(e) as the basis for the relief they request, they do not identify any change in circumstance following the Court's issuance of the preliminary injunction which would render continuance of the injunction inequitable. Defendants instead focus on Rule 59(e) and argue that, for a variety of reasons, the Court must amend the preliminary injunction to correct manifest errors of fact and law and to prevent manifest injustice. The Court addresses each contention in turn.

### A. Appropriate Standard for Preliminary Injunctions

Defendants first argue that the Court issued a mandatory injunction and erred in failing to apply the required "heightened standard" prior to issuing such relief. Dkt. 43-1, at 5 (citing *Park Village Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1161 (9th Cir. 2011)). Defendants contend the Court instead applied the less stringent standard required for prohibitory injunctions.

A prohibitory injunction "freezes the positions of the parties until the court can hear the case on the merits." *Heckler v. Lopez,* 463 U.S. 1328, 1333 (1983). By contrast, a mandatory injunction "orders a responsible party to 'take action.'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co*., 571 F.3d 873, 879 (9th Cir. 2009) (citation omitted). Because a mandatory injunction goes beyond maintaining the status quo, a District Court must deny such relief "unless the facts and law clearly favor the moving party." *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979) (citations omitted).

Defendants do not identify the specific requirements of the Court's preliminary injunction to which they object. However, to the extent the Court ordered Defendants to comply with the Eighth Amendment by providing McGiboney with adequate medical care, the injunction was prohibitory. Preventing future constitutional violations is a classic form of prohibitory injunction. *See Hernandez v. Sessions*, 872 F.3d 976, 998 (9th Cir. 2017) (holding injunction requiring that government conduct future initial bond hearings in accordance with constitutional processes was prohibitory in nature).

The requirements of the preliminary injunction were prohibitory in that they were issued to prevent further constitutional violations with respect to McGiboney. Specifically, the Court first directed Defendants to immediately schedule interventional radiology and neurosurgery consultation appointments for McGiboney. Defendant Haggard herself attested to McGiboney's need for interventional radiology and neurosurgery consultations in the affidavit she filed in support of Defendants' Response to McGiboney's Motion. Dkt. 31-2, ¶ 16. At the time the Court issued the preliminary injunction, nearly four months had passed since an outside provider first identified McGiboney's need for such therapy, yet, as far as the Court was aware, McGiboney had yet to be scheduled for such appointments. Dkt. 31-3, Ex. A at 42-44; Dkt. 40, at 9, n. 10.[2]

As detailed in the preliminary injunction, to establish an Eighth Amendment

---

[2] Nearly a month *after* the Court issued the preliminary injunction, Defendants advised the Court that McGiboney had an interventional radiology appointment on June 11, 2019. Dkt. 42, at 2. Defendants did not apprise the Court of this development before the injunction was issued. McGiboney did not have his neurosurgery consultation until July 30, 2019, two weeks after the Court entered the preliminary injunction, and more than four months after the need for a neurosurgery consultation was first identified on March 22, 2019. *Id.*

violation, a plaintiff must show a "serious medical need" and that the defendant's response to the need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1098 (9th Cir. 2006). Defendants do not dispute that McGiboney has a serious medical need. Although Defendants maintain they were not deliberately indifferent to such need, indifference "may appear when prison officials deny, *delay* or intentionally interfere with medical treatment[.]"*Id.* (emphasis added). The preliminary injunction's requirement that Defendants immediately schedule the interventional radiology and neurology appointments that their own medical director agreed McGiboney needed merely compelled Defendants to comply with the Eighth Amendment and end their months-long delay in ensuring McGiboney received necessary medical treatment.

The preliminary injunction next ordered Defendants to schedule and ensure "McGiboney receives all surgery and/or other medical intervention recommended" at the aforementioned neurosurgery and radiology appointments. Dkt. 40, at 26. The Supreme Court has instructed that prison officials act with deliberate indifference when they "intentionally interfere with . . . treatment once prescribed. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Following *Estelle*, the Ninth Circuit has held that a prison official acts with deliberate indifference when s/he ignores the instructions of the prisoner's treating physician. *Wakefield v. Thompson*, 177 F.3d 1160, 1165 (9th Cir. 1999). Given McGiboney's unrebutted allegations regarding Defendants' failure to comply with treatment ordered by various outside providers and Defendants' confirmation that McGiboney needed radiology and neurosurgery appointments, ordering Defendants to follow through with treatment (if any) prescribed by McGiboney's neurosurgeon and

radiologist simply required Defendants to comply with the Eighth Amendment and was thus prohibitory.

Finally, the preliminary injunction required Defendants to immediately provide McGiboney with "adequate pain, hygiene, and comfort measures, including all prescribed medication, an appropriately sized wheelchair, new (unused) catheters, a medical mattress, and bath cloths as needed." Dkt. 40, at 27. Defendants fault the Court for being both "vague and open ended" in ordering "adequate pain, hygiene, and comfort measures," and overly specific in requiring them to provide an appropriately sized wheelchair, unused catheters, a medical mattress, and bath cloths. Dkt. 43-1, at 27-30; Dkt. 42, at 3, n. 3. Again, given McGiboney's unrebutted allegations regarding Defendants' purported failure to provide adequate pain, hygiene, and comfort measures, ordering Defendants to provide such treatment was prohibitory in that it simply required Defendants to comply with their Eighth Amendment obligations to deliver care commensurate with McGiboney's serious medical need.

The specific care the Court ordered was tailored to McGiboney's condition, his allegations regarding such care, and the absence of any evidence to contradict such allegations in the record at the time the preliminary injunction was issued. As the Ninth Circuit has highlighted, Eighth Amendment cases are highly fact-specific with respect to the "particular inmate, the severity and stage of his condition, the likelihood and imminence of further harm and the efficacy of available treatments." *Edmo v. Corizon, Inc*., 935 F.3d 757, 794 (9th Cir. 2019) (quoting *Roe v. Elyea*, 631 F.3d 843, 859 (7th Cir. 2011)).

As detailed in the preliminary injunction, McGiboney's medical condition is  severe

and requires medical treatment well beyond that of a typical inmate. McGiboney alleged multiple instance of inadequate medical care in Defendants' treatment of his AVM, including an initial wheelchair with a seat "sagging down onto metal bars" and "busting [his] skin open," followed by a new wheelchair that was too big and did not allow him to effectively propel himself forward; that he was denied access to showers and laundry after his pressure sores ruptured; that he was unable to urinate following surgery and denied medication to treat this condition, resulting in permanent abnormal bladder function; that he was forced to reuse his catheters; that he had to sit in his own waste when Corizon ran out of bath cloths; that he had been denied a medical mattress "despite [his] bruised, atrophied leg & open pressure sores; and that he suffered from pain so agonizing he "cries himself to sleep" and at times "loses consciousness." Dkt. 40, at 7-10, 15. In objecting to McGiboney's Motion, Defendants did not respond to any of the aforementioned allegations.

In support of their Motion to Amend, Defendants belatedly submit a 96-paragraph declaration of Dr. Haggard with nearly 300-pages of attachments. Such evidence indicates McGiboney received "a new 20-inch wheelchair that functions properly and is appropriately sized" on May 14, 2019; that Corizon has not denied McGiboney baby wipes associated with catheters and that IDOC is responsible for providing prisoners with bath cloths; that McGiboney has not been denied any prescribed medication or forced to reuse his catheters; and that a medical mattress is not medically indicated—and is in fact contraindicated—by McGiboney's condition. Dkt. 43-1, at 27-30.

Defendants do not dispute that McGiboney's medical care required that he be

provided with prescribed medication, an appropriately sized-wheelchair, and unused catheters. As such, the preliminary injunction did not require Defendants to take affirmative action beyond that required under the Eighth Amendment. However, because it has now been presented with evidence that a medical mattress is contraindicated by McGiboney's condition (Dkt. 45, ¶¶ 79-81) and that bath towels are the responsibility of IDOC—not Corizon—the Court **GRANTS** Defendants' Motion to Amend or Alter in this respect and rescinds the provisions of the preliminary injunction requiring Defendants to go beyond their constitutional duties and provide McGiboney with a medical mattress and bath cloths.[3]

Despite this rescission, the Court notes that although mandatory preliminary relief should not issue unless both the facts and the law clearly favor the moving party and extreme or very serious damage will result, the same general principles inform a court's analysis in deciding whether to issue mandatory or prohibitory relief, including the "likelihood of success" criteria. *Marlyn Nutraceuticals,* 571 F.3d at 879; *Martin v. Int'l Olympic Comm*., 740 F.2d 670, 675 (9th Cir. 1984).

Here, McGiboney demonstrated very serious damage, including death, could result from delay in treatment and a lack of adequate medical care. For instance, in December of 2018, an outside medical provider, Dr. Pond, identified a recurrence of the malformation in McGiboney's spine. Dkt. 10-2, ¶ 11; Dkt. 31-2, ¶ 16. A subsequent CT angiogram

---

[3] Although, as discussed below, this point is likely moot given the expiration of the preliminary injunction, the Court amends the Order to omit any mandatory requirement provided therein.

revealed the malformation measured two centimeters in size, with early drainage visible, calling for embolization. Dkt. 31-3, at 40-42. At this size, McGiboney noted the new malformation was twice the size of any previous malformations he had previously suffered, which caused him to hemorrhage and withstand partial paralysis. Dkt. 35, at 6. McGiboney also highlighted that his brother had died from his own AVM. Dkt. 36-2, at ¶ 7.

As noted, Defendants confirmed that McGiboney required radiology and neurosurgery consultations to establish a treatment plan for his recurring malformation and stated that such appointments were still "in the process of being scheduled" two months after McGiboney filed his Motion. Dkt. 31-2, ¶ 16. Defendants also failed to address McGiboney's allegations regarding his inadequate medical care between January of 2016 and March of 2017, and did not respond to any of his allegations regarding their inadequate provision of basic hygiene measures, medical equipment, and prescribed medication. In the absence of evidence to counter such allegations and in light of the risk of extreme harm to McGiboney, the facts and law in the record at the time of the injunction would have satisfied the higher standard required for mandatory injunctive relief. *Hernandez*, 872 F.3d at 999 (holding mandatory relief is appropriate where the status quo "is exactly what will inflict the irreparable injury" on a plaintiff).

## B. Scope of Injunctive Relief

McGiboney's Motion sought injunctive relief to ensure he received adequate medical care. To meet this request, McGiboney primarily sought medical parole in order to seek treatment from a specific AVM specialist located in Arizona. In their Motion to Amend, Defendants argue:

It appears the fundamental disconnect between Defendants' Response to Plaintiff's Motion and the Court's ruling was the interpretation of the relief sought in Plaintiff's *pro se* Motion for Temporary Restraining Order and Preliminary Injunction. Defendants understood Plaintiff to be requesting very specific relief: "to Order McGiboney's release from confinement so he can go get his medical care in the community." . . . The Court agreed with Defendants that medical parole was not appropriate, and denied Plaintiff's Motion with respect to that relief. However, the Court concluded that medical parole/release was not his only request, citing to a statement in the opening paragraph of Plaintiff's memorandum in support of his Motion in which he states that he seeks a TRO and preliminary injunction "to ensure [he] receives adequate and meaningful medical care and treatment to sustain his life." In the context of the Motion, Defendants interpreted this statement not as a request for particular relief, but rather as a statement of his purpose for seeking the relief that he was clearly seeking, which was medical parole/release. To the extent this statement is construed as a request for relief, it was not sufficiently particular.

Dkt. 43-1, at 6-7 (quoting Dkt. 10-1).

The Court disagrees. In his Preliminary Statement, McGiboney stated:

This is a civil rights action brought under 42 U.S.C. § 121121 et. seq. and 42 U.S.C. § 1983 by a state prisoner whose life-threatening medical conditions place[] him in imminent danger by Defendants denying Plaintiff adequate and meaningful medical care and treatment. Plaintiff seeks a Temporary [Restraining] Order and Preliminary Injunction against Defendants to ensure Plaintiff receives adequate and meaningful medical care and treatment to sustain his life.

Dkt. 10-1, at 1.

The Court cannot find it awarded relief McGiboney did not ask for, as Defendants contend, when McGiboney specifically requested an injunction to ensure he received adequate medical care. While Defendants fault the Court for relying too heavily on McGiboney's Preliminary Statement, McGiboney addressed Defendants' alleged significant delay and inadequate medical treatment throughout his Motion and, liberally construed, sought injunctive relief to enjoin both. *See, e.g.*, Dkt. 10-1, at 2 ("delaying all

treatment has caused Plaintiff irreparable harm"); 4 ("If he does not receive proper medical treatment without further delay Plaintiff could permanently lose all of his daily functions"); 5 ("The hardships that Defendants would suffer would amount to no more than business as usual as they have a legal & fiduciary duty by state & federal laws & the Constitution to provide adequate & meaningful medical care to their charges"); and 7 ("[T]he granting of the relief sought by Plaintiff will serve the public interest because it is always in the public interest for prison officials to obey the law."). McGiboney also detailed multiple specific instances of alleged delay and inadequate medical treatment in his Complaint, as well as in his Declaration in support of the Motion, which incorporated his Complaint. *See generally*, Dkts. 2, 10-2, 10-5, 10-6.

Moreover, in his Reply brief, McGiboney specifically clarified: "The Defendants' [Response] mischaracterizes McGiboney's request for the TRO & Preliminary Injunction. They state he essentially requests a medical parole. That is incorrect. McGiboney requests to receive his constitutionally guaranteed adequate medical care for his life-threatening condition." Dkt. 35, at 2. McGiboney further stated: "relief could be [tailored] in many ways. The Court is not restricted to only looking into McGiboney's previous attempts to resolve the situation by medical parole." *Id*. at 3.

Pro se litigants are held to a lower standard of brief-writing than attorneys, and the Court has a duty to liberally construe pro se filings, particularly, where, as here, civil rights claims are involved. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (citations omitted). The Court construed McGiboney's Motion as a request for both medical parole and adequate medical treatment. Rather than responding to the majority of

McGiboney's allegations regarding his inadequate medical care, Defendants devoted their Response to McGiboney's Motion to arguing that the relief requested was barred by the doctrine of claim preclusion and/or issue preclusion because McGiboney had previously requested, or could have requested, medical parole in a prior Eighth Amendment case, *McGiboney v. Agler*, 1:13-cv-00214-REB, as well as in a prior state habeas corpus proceeding, *McGiboney v. Warden Keith Yordy et al.*, Case No. CV01-17-07625. The remainder of Defendants' Response argued medical parole is not an available remedy in a 42 U.S.C. § 1983 action.

The Court granted McGiboney's Motion in part and denied it in part. The Court agreed with Defendants that medical parole was not available injunctive relief in an action pursuant to 42 U.S.C. § 1983 and denied the Motion to the extent it requested such remedy. However, given McGiboney's specific request for injunctive relief to ensure he received adequate and meaningful medical treatment, the serious allegations regarding inadequate medical treatment throughout McGiboney's Motion, supporting Declaration, and Complaint, and Defendants failure to either respond to, or present evidence to counter, the majority of such allegations, the Court determined McGiboney was likely to succeed on his Eighth Amendment claims and issued injunctive relief to ensure McGiboney received adequate medical treatment. The Court accordingly rejects Defendants' contention that it awarded relief McGiboney did not request

## C. Opportunity for Clarification

Defendants next argue they "should have been given an opportunity to clarify their response and submit additional information and argument if the Court felt the Defendants

failed to address certain issues that may not have been entirely clear in the *pro se* motion." Dkt. 43-1, at 8. Ultimately, Defendants had the opportunity to address McGiboney's allegations in their Response to his Motion, and, as explained above, the Court disagrees with Defendants' contention that McGiboney's request for adequate medical treatment was unclear. Nevertheless, the Court will address each of Defendants' specific arguments regarding their request for clarification.

### 1. Evidentiary Hearing

Defendants first fault the Court for failing to hold an evidentiary hearing or oral argument on McGiboney's motion, despite their own failure to ever request either a hearing or oral argument, or to object to the Court's order—issued more than a month before the preliminary injunction—which vacated a hearing on McGiboney's Motion. Dkt. 37. The Ninth Circuit has noted failure to request an evidentiary hearing may constitute a waiver. *Int'l Molders' and Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 555 (9th Cir. 1986) (citing *Jacobson & Co., Inc. v. Armstrong Cork Co.*, 548 F.2d 438, 442 (2d Cir. 1977)). The Ninth Circuit also rejects "any presumption in favor of evidentiary hearings" on preliminary injunction motions. *Kenneally v. Lungren*, 967 F.2d 329, 334 (9th Cir. 1992) (rejecting plaintiff's claim that the district court denied him due process when it denied his request for a preliminary injunction without first affording him an evidentiary hearing); *see also United States v. Oregon*, 913 F.2d 576, 582 (9th Cir. 1990) (rejecting claim that an evidentiary hearing was required where the motion for which appellants sought a hearing was not a decision on the merits).

Defendants also suggest they were denied the opportunity to argue the matter. Dkt.

43-1, at 9. However, the rule in the Ninth Circuit is that a preliminary injunction "may, in the discretion of the trial court, be granted or denied upon the affidavits." *San Francisco-Oakland Newspaper Guild v. Kennedy*, 412 F.2d 541, 546 (9th Cir. 1969). Further, this is not a case where one side to the controversy was denied the opportunity to be heard; rather, Defendants presented written argument, an affidavit, and pages of evidence to support their position. Dkts. 31, 31-2, 31-3. In fact, the Court granted Defendants' request for an extension to respond to McGiboney's Motion and allowed them an additional three weeks to submit their Response. Dkt. 26. The Court declines Defendants' invitation to alter or amend the preliminary injunction because it did not hold oral argument.

### 2. PLRA

Defendants next suggest allowing clarification and additional information is "particularly important in the context of the PLRA where a Court is required to make sure the injunction is necessary and limited as possible." Dkt. 43-1, at 9. The Court specifically determined the injunction satisfied the PLRA's requirement that "preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3636(a)(2); Dkt. 40, at 11, 24. Defendants do not cite, and the Court is not aware of, any authority to suggest the Court is required to *sua sponte* seek additional information from prison officials in order to satisfy the PLRA when such officials fail to submit relevant information in response to a prisoner's motion for injunctive relief.

### 3.  Expiration

Third, Defendants note the PLRA provides that a preliminary injunction "automatically expires" after 90 days "unless the court makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the order final before expiration of the 90-day period." Dkt. 43-1, at 10 (citing 18 U.S.C. § 3626(a)(2)). Defendants contend the Court erred by stating in its Order that "[t]he preliminary injunction shall remain in place pending a full determination of McGiboney's claim upon the merits or upon further Order of the Court." *Id*. (citing Dkt. 40, at 27). The Court did not make the preliminary injunction final and thus agrees that this statement was in error. The preliminary injunction accordingly properly expired within ninety days of its entry and the Court strikes the aforementioned sentence from its Order.[4]

### 4.  *Martinez Report*

Fourth, Defendants suggest that the Court should have requested a *Martinez* Report, pursuant to *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), if it "felt the Defendants failed to address certain issues that may not have been entirely clear in the *pro se* motion."

---

[4] McGiboney argues that the Motion to Amend should be denied as moot because Defendants filed a Certification (Dkt. 42) stating they were in compliance with the preliminary injunction in all respects. As such, McGiboney contends there is "no longer a possibility that Defendants can obtain relief from any ruling on their Rule 59(e) Motion." Dkt. 48, at 2 (citing *Bishop Paiute Tribe v. Inyo Cty.*, 863 F.3d 1144, 1154 (9th Cir. 2017)). Defendants counter that the mootness doctrine does not apply because the injunction has not expired, stating that although Defendants "are currently in compliance with the terms of the injunction, they are still required to continue taking affirmative acts with respect to Plaintiff's medical care, and if they suddenly choose not to provide the specific care mandated by the Order, presumably they could be found to be in violation of the injunction." Dkt. 49, at 3-4. Although the injunction expired under the provisions of the PLRA on or about October 11, 2019, given the Court's erroneous language regarding expiration in the order section of the injunction, the Court agrees that the injunction was not moot prior to the instant Order to the extent it imposed affirmative obligations on Defendants. As of the date of this Order, however, there is no longer any uncertainty as to whether or not the injunction has expired: it has.

Dkt. 43-1, at 10. In *Martinez*, the trial court ordered prison official defendants to conduct an investigation of an incident to include interrogation of those concerned, and file a report with the court, to enable the court to decide jurisdictional issues and make an informed decision as to whether a prisoner's suit was frivolous. *Id*. at 319. The Ninth Circuit approved the use of *Martinez* reports in *In re Arizona*, 528 F.3d 652, 659 (9th Cir. 2008). Defendants note this Court ordered *Martinez* Reports in Successive Review Orders issued in *Gomez v. Atencio*, Case 1:18-cv-00134-BLW and *Hawkins v. Corizon*, Case No. 1:16-cv-00060-EJL, and could have similarly requested specific information regarding issues the Court believed were not adequately addressed, rather than ordering preliminary injunctive relief. Dkt. 43-1, at 10-11.

Notably, in each of the aforementioned cases, *Martinez* Reports were ordered *before* defendants had had any opportunity to submit evidence or affidavits regarding a prisoner's claims of inadequate medical treatment. *Martinez* F.2d at 319 (ordering Report before defendants answered prisoner's complaint); *Arizona*, 528 F.3d at 659 (ordering *Martinez* Report in scheduling order issued after final answer was filed); *Gomez*, 1:18-cv-00134-BLW, Dkt. 14 (ordering *Martinez* Report to properly review allegations in prisoner's amended complaint); *Hawkins*, Case No. 1:16-cv-00060-EJL (ordering *Martinez* Report before answer to prisoner's complaint was filed).

By contrast, Defendants filed a response brief, affidavit, and supporting exhibits in opposition to McGiboney's Motion in this case totaling almost 100 pages. Dkt. 31, 31-1, 31-2, 31-3. That such materials did not address many of the allegations in McGiboney's Motion did not obligate the Court to ask for, nor Defendants to be entitled to present,

additional evidence. Further, the Court is not clairvoyant and was unaware Defendants purportedly had, but did not submit, additional evidence to rebut McGiboney's claims—regardless of the reason such evidence was not filed.

   5.  *Hearing*

Finally, Defendants request that the Court "entertain a hearing on the issues raised in Plaintiff's Motion[.]" Dkt. 43-1, at 11. However, as noted above, the preliminary injunction expired (or should have expired, absent the Court's above-corrected error) on or about October 11, 2019, and McGiboney has not sought to renew it. As a result, the injunction no longer constrains Defendants, and McGiboney would have to continue to prove that preliminary relief is warranted in order to obtain a second preliminary injunction. *Mayweathers v. Newland*, 258 F.3d 930, 936 (9th Cir. 2001) (holding district court did not violate provision of PLRA under which a grant of preliminary injunctive relief automatically expires after 90 days when it entered a second injunction after its initial injunction expired). If McGiboney again seeks preliminary injunctive relief, the Court can hold a hearing at that time.[5] There is no basis for holding a hearing on a now-expired injunction.

### D.  Plaintiff's Allegations

Defendants also suggest the Court erred in accepting McGiboney's unsupported allegations and conclusory statements. Yet, McGiboney's Motion was not without evidentiary support. McGiboney submitted his own declaration (although unsworn), letters

---

[5] Presuming the Court finds a hearing is warranted. *See* Dist. Idaho Loc. Civ. R. 7.1(d).

from treating physicians and Defendant Haggard regarding his specific condition and treatment, numerous IDOC offender concern forms he submitted regarding his medical treatment, as well as health service requests he submitted to Corizon. The Court did not base its decision on unsupported allegations.

Further, as explained in the Court's order, the rules of evidence do not strictly apply to preliminary injunction proceedings. Dkt. 40, at 12; *Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*, 736 F.3d 1239, 1250 n. 5 (9th Cir. 2013); *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988) ("It was within the discretion of the district court to accept . . . hearsay for purposes of deciding whether to issue the preliminary injunction."). This flexibility exists because "[t]he urgency of obtaining a preliminary injunction necessitates a prompt determination," and makes it difficult for a party to procure supporting evidence in a form admissible at trial. *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984).

Finally, and perhaps most importantly, the Court only accepted McGiboney's allegations when Defendants failed to present any evidence to rebut them. Dkt. 40, at 6, n. 8. The Court highlighted the evidence Defendants submitted regarding McGiboney's medical treatment. *Id*. at 6-10.[6] Defendants contend McGiboney "presented no objective

---

[6] Defendants suggest the Court erred in finding they did not address McGiboney's medical care between January of 2016 and March of 2017 because Dr. Haggard's declaration briefly summarized a consultation between two of McGiboney's physicians on January 21, 2016, during which they determined the risks of surgery were prohibitively high. Dkt. 43-1, at 13. McGiboney's allegations regarding his treatment between January 7, 2016, and March of 2017, detailed his repeated requests for an MRI—not surgery—between January 7, 2016, and March of 2017. Defendants did not offer any response to such allegations. To the

or credible medical evidence to support this allegations and conclusory statements regarding [his medical] treatment." Dkt. 43-1, at 12. Although the Court believes this is an inaccurate characterization of McGiboney's evidence, even if it were true, Defendants fail to appreciate that they did not present objective or credible medical evidence to counter the majority of McGiboney's allegations.

### E. Additional Evidence

Defendants devote most of the Motion to Amend to presenting evidence to belatedly counter the allegations in McGiboney's Motion. Dkt. 43-1, at 14-34. However, the newly submitted evidence regarding McGiboney's condition and care between January 2016 and March 2017, treatment after May 23, 2019, and in response to McGiboney's specific allegations of insufficient hygiene, prescriptions, and medical equipment, was not presented to the Court in Defendants' Response to McGiboney's Motion.

Only three grounds justify altering or amending the judgment under Federal Rule of Civil Procedure 59(e): "(1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in the controlling law." *United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 780 (9th Cir. 2009). Defendants imply

---

extent the preliminary injunction was unclear, the Court clarifies that Defendants did not address McGiboney's medical care between January of 2016, and March of 2017, other than to note McGiboney's physicians determined surgery was not on an option on January 21, 2016. Defendants also object to the Court's failure to accept Defendant Haggard's statement that McGiboney "has been and is receiving adequate and appropriate medical care." Dkt. 31-2, ¶ 17. The Court could not simply accept this proposition with respect to McGiboney's specific allegations between January 2016, and March 2017, without any evidence or specific testimony from Dr. Haggard to support it.

reconsideration is appropriate due to the evidence submitted with their Motion to Amend and to prevent manifest injustice.

Where, as here, the evidence is available to a party before it filed its opposition, it is not "newly discovered evidence" warranting reconsideration. *Frederick S. Wyle Prof'l Corp. v Texaco, Inc*., 764 F.2d 604, 609 (9th Cir. 1985). The "overwhelming weight of authority is that the failure to file documents in an original motion or opposition does not turn the late filed documents into newly discovered evidence." *Sch. Dist. N. 1J, Multnomah Cty., Or. v. ACandS, Inc*., 5 F.3d 1255, 1263 (9th Cir. 1993) (internal quotation marks and citations omitted). Although Defendants suggest they did not file the newly submitted evidence because they did not understand McGiboney's requested relief, Defendants do not contend that the evidence submitted in support of their Motion to Amend is either "newly discovered" or was somehow unavailable at the time they responded to McGiboney's Motion. *Id.*

Defendants also suggest the newly submitted evidence should be admitted because Defendants' Motion to Amend "sets forth, in detail and with the support of a 96-paragraph Declaration by Dr. Haggard and an affidavit and 300 pages of records" how the preliminary injunction was based on manifest errors of fact and law. Dkt. 49, at 6. However, a "Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Carroll*, 342 F.3d at 945. Defendants cite no case law finding that a court commits "manifest error" based on evidence or argument not before it at the time of the ruling for which reconsideration is sought.

Finally, Defendants suggest manifest injustice will arise if the Court does not consider such evidence because:

> Corizon and Dr. Haggard are very concerned that the Court has found that there is a likelihood of success that Plaintiff will be successful in proving that their actions or inactions constitute deliberate indifference (which is akin to a finding of likely criminal recklessness). In light of the facts and legal arguments herein, Corizon Defendants should not have such a finding hanging over their heads.

Dkt. 43-1, at 2.

Findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). This is because a preliminary injunction is generally issued "in the early stages of litigation, when the record is insufficiently complete to allow a reliable resolution of the merits." *Sierra On-Line*, 739 F.2d at 1422. As the Ninth Circuit has explained, a preliminary injunction, "is not a preliminary adjudication on the ultimate merits: it is an equitable device for preserving rights pending final resolution of the dispute. The district court is not required to make any binding findings of fact; it need only find probabilities that the necessary facts can be proved." *Id*. at 1423.

As such, when a federal district court has granted a preliminary injunction, the parties generally will have had the benefit neither of a full opportunity to present their cases nor of a final judicial decision based on the actual merits of the controversy. *Camenisch*, 451 U.S. at 396. Although the Court found McGiboney satisfied the elements of a preliminary injunction based on the record before it at the time the order was issued, this finding may change once Defendants have had the full opportunity to present their case—

whether on summary judgment or at trial—and receive a final decision on the actual merits. As such, Defendants will not suffer manifest injustice if the Court fails to consider the newly submitted evidence or alter its prior decision beyond the changes it has outlined today.

**V**. **Motion for Leave to File Excess Pages (Dkt. 44)**

Defendants seek the Court's leave to file additional pages in excess of the twenty-page limit under Local Civil Rule 7.1(a)(2). Good cause appearing, the Court GRANTS the motion.

## VI.   ORDER

NOW, THEREFORE, IT IS HEREBY ORDERED:

1. Defendants' Motion to Alter or Amend (Dkt. 43) is **GRANTED** in part and **DENIED** in part. Defendants' Motion is **GRANTED** in two respects:

   (a) The Court's July 11, 2019, Order is **AMENDED** to strike the preliminary injunction's requirement that Defendants provide McGiboney with a medical mattress and bath cloths;

   (b) The July 11, 2019, Order is **AMENDED** to strike section VI (1)(e) stating the "preliminary injunction shall remain in place pending a full determination of McGiboney's claims upon the merits or upon further order of the Court." Dkt. 40, at 27. This statement was in error and violates the ninety-day expiration on preliminary injunctions required under the PLRA. The injunction accordingly expired on or about October 11, 2019, and, to the extent it did not expire given the Court's error, expires as of the date of this

Order;

2. The Motion to Alter or Amend is **DENIED** in all other respects;

3. The Motion for Leave to File Excess Pages (Dkt. 44) is **GRANTED**.

DATED: April 3, 2020

David C. Nye
Chief U.S. District Court Judge